**LAW OFFICES OF PERRY C. WANDER**
Perry C. Wander, Esq. (SBN: 102523)
9454 Wilshire Boulevard, Penthouse,
Beverly Hills, California 90212
Telephone: 310-274-9985
Facsimile:  310-274-9987
Email: pcwlaw@msn.com

Attorney for Plaintiff Victorio Campos

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIO CAMPOS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>1169 PALMS, LLC, PENMAR/PALMS LLC, as limited liability companies, ROSARIO PERRY, an individual, ROSARIO PERRY, A PROFESSIONAL LAW CORPORATION, a corporation, STEVEN H. SCHWARTZ, in his individual and official capacity, and DOES 1-20,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY, INJUNCTIVE RELIEF:**<br><br>(1) Violation of Fair Housing Act, 42 U.S.C. § 3601 et seq<br>(2) Violation of California Fair Employment and Housing Act, Cal. Gov. Code § 12955(a)<br>(3) Violation of Federal Eviction Moratorium, 42 U.S.C. § 264<br>(4) Violation of California State Eviction Moratorium, AB 832, *inter alia*<br>(5) Violation of Los Angeles City Eviction Moratorium, Ordinance Nos.186585 and 186606<br>(6) Wrongful Eviction, Cal. Civ. Code §§ 1946.2 and 1947.12<br>(7) Abuse of Process<br>(8) Violation of Los Angeles Tenant Anti-Harassment Ordinance, Section 45.33<br>(9) Intentional Infliction of Emotional Distress<br>(10) Negligent Infliction of Emotional Distress<br>(11) Breach of the Implied Covenant of Good Faith and Fair Dealing<br>(12) Violation of the Ellis Act, Cal. Gov. Code §7060.4<br>(13) Constructive Eviction<br>(14) Preliminary and Permanent Injunction<br>(15) Declaratory Relief<br>(16) Breach of Implied Covenant of Quiet Enjoyment, Cal. Civ. Code § 1927<br>(17) Violation of Civil Rights Act of 1866 |

Plaintiff Victorio Campos (hereinafter "Campos" or "Plaintiff"), hereby alleges, based upon information and belief, against Defendants 1169 Palms, LLC, Penmar/Palms LLC, Rosario Perry, Esq. ("Rosario"), Rosario Perry, A Professional Law Corporation ("Rosario PLC"), and Steven H. Schwartz ("Schwartz")(collectively, "Defendants") as follows:

## NATURE OF THE CASE

1.      This action seeks monetary, declaratory, and injunctive relief against Defendants for Defendants' unlawful discrimination against Plaintiff on the basis of his race, age, and disability status in violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, for Defendants' willful violations of federal, states, and local stays on evictions during the COVID-19 pandemic, for Defendants' constructive eviction of Plaintiff from his residence under the California Civil Code, and, *inter alia*, the Defendant's abuse of the legal system to systemically deprive the Plaintiff of his home to the direct benefit of their own bottom line.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal law claims and arise out of a common nucleus of related facts. Plaintiff's state law claims are related to Plaintiff's federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in the Central District of California because Defendants 1169 Palms, LLC, Penmar/Palms LLC, and Rosario PLC have their principal place of business in the district and Defendant Schwartz's primary residence is in the district. Rosario, in his official capacity, is employed within the district. In addition, the Defendants are attempting to evict Plaintiff from property located wholly within the district.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

## PARTIES

4.      Plaintiff Campos is a long-term resident of Venice, California. Campos has rented a residence located at 1809 Penmar Ave, Venice, California 90291 ("Plaintiff's Residence") since at least 2010.

5.      Defendant Schwartz is an individual residing, upon information and belief, at 1910 Montana Avenue, Santa Monica, California 90403.

6.      Defendant 1169 Palms, LLC is a limited liability company registered and active with the Secretary of State of California at 1910 Montana Avenue, Santa Monica, California 90403. Defendant Schwartz is listed as its sole member.

7.      Defendant Rosario PLC. is a corporation law firm registered and active with the Secretary of State of California at 312 Pico Boulevard, Santa Monica California, 90405. Defendant Rosario (CA Bar No. #55061) is Rosario PLC's partner and is employed at the same address as Rosario PLC. All references to Rosario PLC are to both Rosario and any and all other attorneys and/or agents of Rosario PLC, including, but not limited to, one Vano D. Abesadze, Esq. (CA Bar No. #316489).

8.      Defendant Penmar/Palms LLC is a limited liability company registered and active with the Secretary of State of California at 1910-A Montana Avenue, Santa Monica, California 90403. Defendant Schwartz is listed as its sole member.

9.      Each Defendant was, in doing the things complained of, was the agent of its co-Defendants herein and acting within the scope of said agency and/or representation, and each Defendant is jointly and severally responsible and liable to Plaintiff for the damages alleged.

## FACTS

### A.    *Plaintiff's Background*

10.      Plaintiff Campos is a 63-year-old male that has resided at the address of 1809 Penmar Ave, Venice, California 90291 since at least 2010. Campos is of Hispanic origin and a naturalized citizen of the United States. His primary language is Spanish, and speaks English as a second language. Campos is head of his household, as he works full-time and lives alone. Plaintiff initially initiated this complaint in pro per, and is being assisted in this case *pro bono* by counsel.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

11.     Campos suffers from a variety of health conditions that are relevant to this case. Campos suffers from an abnormal gait which inhibits his ability to walk at a normal pace. Campos has suffered, and continues to suffer, from slow gait speed, short stride length, increased stride width, and increased time in double limb support during usual path walking, among other symptoms. Campos, as a result, requires the use of a walking cane in order to walk, and has difficulty traversing narrow paths and stairs efficiently or expediently.

12.     Campos additionally suffers from Psoriasis, an immune disease resulting in inflammation of the skin, that is commonly exacerbated by environmental factors such as stress and exposure to contaminants. Campos additionally states he suffers from diabetes and a variety of additional health complications.

13.     Campos is considered elderly and handicapped under Federal and California State Law for the purposes of this complaint, as he is a head of household, above the age of 60, and suffers from an orthopedic disability impairing personal mobility. *See* 24 C.F.R. §§ 100.300 – 100.308. *See also* Cal. Health and Safety Code § 50067 and 50072.

**B.**     ***History of 1169 Palms Property***

14.     Plaintiff's Residence is part of seven housing units located at 1169 Palms Blvd, Venice, California 90291-3524 ("1169 Palms Property"). The 1169 Palms Property encapsulates Tract # 6250, Lot 46, and Assessor's Parcel Number 4243-002-065.

15.     Defendant Schwartz purchased the 1169 Palms Property in July 2005 from non-parties Durley Park Management Hale Casey, and Nguyen Mylene. Schwartz, prior to the purchase in July 2015, registered Penmar/Palms LLC with the office of the California Secretary of State. Upon information and belief, Penmar/Palms LLC was utilized as part of the sales transaction. In February 2020, Schwartz registered 1169 Palms, LLC with the office of the California Secretary of State. Subsequently, between February and March 2020, Schwartz transferred his ownership of the 1169 Palms Property to 1169 Palms, LLC via grant deed.

16.     Prior to 2015, the 1169 Palms Property consisted of at least seven housing units that were originally built in approximately 1937. Each unit had approximately one bed and one bathroom.

17. Upon information and belief, Defendant Schwartz, through Penmar/Palms LLC, began planning to sub-divide and develop the 1169 Palms Property after purchase of the property in 2015.

18. Between 2016 and 2018, Defendant Schwartz, through Penmar/Palms LLC, informed the residents of the 1169 Palms Property, including Plaintiff, that the property would be redeveloped into luxury apartments. In short, Defendants seek to convert one of the few remaining low-income tenant housing tracts in Venice, California into high-priced rental properties without due consideration for the life and wellbeing of existing residents.

19. The redevelopment of the 1169 Palms Property commenced in approximately 2017. Construction on the property continues at present. Upon information and belief, all residents at the 1169 Palms Property aside from Plaintiff have vacated their residences.

**C.   *Defendant's Intentional Degradation of Plaintiff's Residence***

20. Plaintiff Campos states that Defendant Schwartz, through Penmar/Palms LLC, began instituting multiple new rules and regulations on 1169 Palms Property tenants after Defendants purchased property in 2015. Plaintiff states that he was prevented from utilizing his garage, from being able to smoke cigars in his own home, and from being able to have pets. Plaintiff had been a month-to-month tenant prior to Defendants purchase of the property, and subsequently did not have a written lease agreement. Therefore, new rules and regulations were imposed on Plaintiff without due consideration.

21. Between 2015 and 2018, Plaintiff was told by unidentified representatives of Defendants that he would need to leave his apartment in order for the redevelopment to complete. Plaintiff refused to vacate and continued to live in his property.

22. Construction on 1169 Palms Property commenced in approximately 2017 after multiple other tenants on the property vacated their premises. It was at this time that Plaintiff began to suffer a drastic decrease in his quality of life as a result of Defendants' construction. The below section contains a non-exhaustive list of the harms imposed by Defendants on Plaintiff following commencement of construction:

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

a) Constriction of a narrow access path into Plaintiff's home, approximately four-feet wide, that goes through and underneath active construction zones. This access path, at present, has multiple nails sticking into the walkway into Plaintiff's residence. In addition, the walkway has multiple wires handing down into Plaintiff's walking path. Plaintiff's mobility issues make navigation of this path (the only way to get into his home) challenging and detrimental to his ongoing health conditions. See Exhibit A for images of narrow access path as of June 2021.

b) Permanent shutdown of on-site laundry facilities. Plaintiff, previously accustomed to using this laundry site, must now travel to outside laundry facilities. This additional travel causes additional aggravation of Plaintiff's ongoing medical conditions.

c) Multiple service disruptions to Plaintiff's water, heat, and gas as a direct result of ongoing construction. The City of Los Angeles Housing Community Investment Department (LAHCID) was forced to issue an Order to Restore Utilities in March 2020, noting that an inspection of Plaintiff's residence indicated that it "lack[ed] the required gas service required for hot water and functional heating appliance" pursuant to the 8903 Los Angeles Municipal Code.

d) Multiple violations of the Los Angeles Municipal Code City of Los Angeles Housing Community Investment Department were noted in March 2020, including failure to provide adequate fire alarms to Plaintiff, failure to maintain plaster/drywall walls/ceilings in a smooth and sanitary condition, failure to provide and maintain the required central or individual room heating appliance in good repair and operable at all times, failure to provide and/or maintain the required foundation vent or under floor access screens, and failure to maintain the plumbing system in conformity with the code regulations and department approvals in effect at the time of construction. *See* Exhibit B for Notice and Order to Comply.

e) Placing of metal gates 3 to 4 feet from the Plaintiff's front door, limiting the outdoor area to which Plaintiff has access. Plaintiff could no longer use outdoor patio furniture or sit outside comfortably.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

     f)  Placing of portable toilets several feet from Plaintiff's front door, causing noxious smells to ruminate into Plaintiff's residence.

     g)  Placing of a pile of dirt and concrete, approximately 5 to 7 feet, several feet from Plaintiff's residence. Particulate matter from this pile of dirt and concrete would blow into Plaintiff's residence on windy days, aggravating Plaintiff's psoriasis and causing breathing difficulties.

     h)  Removal of lighting from outdoor areas of Plaintiff's residence, causing Plaintiff to be fearful for his safety at night.

     i)  Urination and defecation on the sidewalk in front of Plaintiff's residence by construction workers employed by Defendants.

     j)  Installation of security cameras on the outside of Plaintiff's property without Plaintiff's permission that aim directly at Plaintiff's residence.

     k)  Construction workers yelling and making loud noises in the early mornings, inhibiting the Plaintiff from being able to sleep on the days he does not have work.

     l)  Spray pained unit number for Plaintiff as of June 30, 2021, on sidewalk and walls leading to Plaintiff's apartment, with the assumption that said unit number directions would be used to direct a law enforcement official to evict Plaintiff.

     m)  Security guard knocking on Plaintiff's door past 9:00 P.M. without prompting to "check" on Plaintiff.

23.    Plaintiff continues to live at his residence despite the high degree of discomfort thrust upon him by the Defendants and their representatives. Plaintiff has tried on multiple occasions to communicate his concerns to Defendants, but most, if not all concerns, have gone unheeded. To the contrary, Defendants have responded to Plaintiff's complaints by making his residency worst, including, but not limited to, placing invasive security cameras on the outside of Plaintiff's residence. Plaintiff has been forced to endure jail-like conditions at his residence, with him being constrained behind metal fences, having his own way of escape being a pathway too narrow for him to navigate with his current health conditions, and having his life monitored at all hours via security cameras and unprompted "checks" by security guards. Plaintiff is of the strong belief that Defendants have

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

1   instituted all changes with malicious intent to constructively evict him to the benefit of slumlords.

2       **D.**    *Federal, State, and Local COVID-19 Stays on Eviction*

3       24.    On March 4, 2020, the California Governor and the County of Los Angeles declared a

4   formal State of Emergency concerning the coronavirus disease 2019 (COVID-19) pandemic. On

5   March 13, 2020, by Proclamation 9994, the President of the United States declared a national

6   emergency concerning (COVID-19).

7       25.    On March 27, 2020, the California Governor signed an Executive Action placing a stay

8   on evictions in California. Tenants, under this Executive Action, are able to avoid eviction due to

9   nonpayment of rent as long as a resident has provided notice to their landlord "that the tenant needs

10   to delay all or some payment of rent because of an inability to pay the full amount due to reasons

11   related to COVID-19." The Executive Order provides that "[n]o writ may be enforced while this Order

12   is in effect to evict a tenant from a residence or dwelling unit for nonpayment of rent" if the above

13   notice requirements are met. The Governor's eviction moratorium has been extended multiple times,

14   and most recently was extended to September 2021 in June 2021.

15       26.    Los Angeles City have also instituted its own eviction moratoriums in response to

16   COVID-19, providing that effective March 4, 2020, through September 30, 2021, that no tenant in

17   Los Angeles City may be evicted for non-payment.

18       27.    In September 2020, the Center for Disease Control and Prevention (CDC) issued its

19   own federal eviction moratorium "halting residential evictions of covered persons for nonpayment of

20   rent". On June 24, 2021, CDC modified and extended the order until July 31, 2021. The CDC has

21   provided, in part that:

22           A landlord or residential property owner would….violate this Order, for example,
        if it executed or caused to be executed a writ of eviction or possession (or had an

23           agent or attorney execute or cause to be executed such a writ) that led to the actual
        physical removal of a covered person during the period of the Order.

24       28.    The Plaintiff, as a resident of Los Angeles, is eligible for all federal, California state,

25   and City of Los Angeles eviction protections instituted during the COVID-19 pandemic. Therefore,

26   any and all efforts by the Defendants to evict Plaintiff from his residence for non-payment of rent

27

28

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

and/or no-fault actions by Plaintiff are in violations of some or all existing eviction moratorium protections.

## PROCEDURAL HISTORY

**A.**    *State Court Actions - Attempted Eviction During a Pandemic*

29.    Plaintiff began to have his monthly rent checks returned by Defendants commencing on approximately March 2020. Plaintiff attempted to pay rent owed for several months after, but Defendants continued to reject his submitted rental payments Subsequently, Plaintiff no longer was paying rent after March 2020.

30.    Defendants have attempted to evict Plaintiff from his residence via a Tenant Habitability Plan, which required Mr. Campos to move out of his apartment, into another apartment. The Defendants attempted to have Plaintiff move into an apartment not comparable to his current residence. Plaintiff had not been guaranteed that his new apartment would be handicap accessible (a requirement due to Plaintiff's mobility issues) and Plaintiff fears he will be forced to move to a region considered less safe. Plaintiff, as a handicapped senior, has little ability to defend himself if attacked, and therefore he desires the safety of his current residence. Concerns raised by Plaintiff to Defendant about having to move during a pandemic have gone unheeded.

31.    The LAHCID ruled in favor the Defendants' Tenant Habitability Plan ("THP") in late 2020 and ordered Campos to vacate his residence within 15 days. Plaintiff appealed this decision to LAHCID, and on November 20, 2020, LAHCID upheld the Defendant's Tenant Habitability Plan. Plaintiff then filed a Writ of Mandate on February 18, 2021, seeking judicial review of the LAHCID's determination pursuant to California Code of Civil Procedure §1094.6 based on the fact that the Defendant never offered one month's rent for relocation, the Plaintiff has no money to move, is unable to pack his personal property due to his disability, and Plaintiff's fear of exposure to COVID should he be required to move.

32.    The state court, on behest of the Plaintiff, has been requested to take judicial notice of the Writ of Mandate, which was filed within the 90-day period, as well as the 120 Ellis Act Notice to Vacate, the Three-day Notice to Vacate, and the LAHCID decision. Instead of waiting until the time to seek judicial review of any decision of the City expired, the Defendants served a defective Three-

Day Notice to Quit, and filed an unlawful detainer action. The notice also contained a forfeiture of the lease, which would then provide the Defendants with a basis to not pay the tenant any relocation money. A copy of the state court complaint, the monthly rental agreement, and the three-day notice to quit are attached as Exhibit C.

33.     Counsel for Plaintiff filed its Motion to Quash Summons for Unlawful Detainer on March 10, 2021, in the Superior Court of California, County of Los Angeles. This Motion to Quash was subsequently denied by the state court. The ruling on the motion to quash was mailed to Plaintiff on May 28, 2021.

**B.**     ***Defendant's Egregious Abuse of Legal Process (and History Therefor)***

34.     A writ of mandate appealing the denial of the Motion to Quash was timely filed on June 4, 2021. The Superior Court Appellate Department denied the appeal on June 16, 2021. However, the clerk of the Court wrongfully entered the Defendants' default on June 8, 2021, 8 days prior to the Plaintiff's responsive pleading being due. Plaintiff attempted to file Defendants' demurrer, motion to strike and answer on June 21, 2021, but all documents were rejected due to entry of default by the Court on June 8, 2021.

35.     Plaintiff is now of the belief that the Defendants' law firm, Rosario PLC, by and through its partner Rosario, has abused the legal process to wrongfully evict Plaintiff from his home in the middle of a global pandemic. Plaintiff's counsel has advised Defendant Rosario PLC to not serve any writ on Plaintiff at this time, as entered default was improper and Plaintiff is still subject to existing eviction moratoriums. It appears that Rosario, through his firm Rosario PLC, continuously and with malice, pushed the state court clerk to improperly enter default despite pending actions and appeal filed by Plaintiff. In addition, Rosario PLC has contuously failed to email pleadings and litigation documents to Plaintiff's counsel and have instead sent document through physical mail and proprietary software, despite requests by Plaintiff's counsel to only receive documents via email. Plaintiff's counsel at this time was unable to work in a physical office due to the COVID-19 pandemic, so the Defendant's failure to willingly send documents via email is particularly egregious. Rosario PLC also sent multiple *ex parte* commutations to Plaintiff at his address despite knowledge that Plaintiff was represented by legal counsel. Unsurprisingly, Rosario, and his firm, are known in the

Los Angeles area of representing slumlords and unscrupulous landlords and developers in novel and unjust evictions cases targeting long-term, low-income, and often minority tenants in rent-controlled apartment to develop multi-million dollars projects without concern for displacing tenants or trampling on their civil rights. Rosario was previously sued by the City Attorney Consumer Protection Unit for egregious housing discrimination against tenants - Terminating tenancies for discrimination on the basis of race, religion, and national origin, defrauding tenants, many of which were elderly and disabled. Los Angeles Superior Court Case, No. SC094695 (2007). In addition, Rosario is currently Defendant in a civil rights lawsuit before the United States District Court, Central District of California, filed January 27, 2020, which alleges that Rosario "directed and controlled the initial conspiracy and the continuing conspiracy to cover up the conflicts of interest and to defraud TRUE HARMONY of all rights of ownership or title in the property and including rights to cash proceeds of its sale in July of 2011". *See* Case 8:20-cv-00170-JAK-ADS. In sum, this is not the first time Rosario Perry and his firm have been accused of abuse of the legal process for the benefit of slumlords.

## FIRST CAUSE OF ACTION

[Fair Housing Act, 42 U.S.C. § 3601 *et seq*]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

36.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

37.     Defendants 1169 Palms, LLC, Penmar/Palms LLC, and Schwartz, by and through their pattern of discrimination based on handicap status against Plaintiff, have violated the Fair Housing Act ,42 U.S. Code § 3604 by engaging in the following discriminatory practices by discriminating against Plaintiff in the rental of his dwelling on the basis of his handicap. 42 U.S. Code § 3604(f)(2)(a). Defendants have failed to provide reasonable modifications of existing premises occupied or to be occupied by Plaintiff if such modifications may be necessary to afford such person full enjoyment of the premises. Plaintiff's existing medical conditions require him to have a wide pathway to walk without suffering harm to himself. Defendants have forced Plaintiff to use a narrow pathway as the only means to enter his residence, and have failed to make reasonable accommodations to permit ease of access for Plaintiff.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

In addition, Defendants have failed to provide adequate substitute accommodations for Plaintiff that consider Plaintiff's handicap status.

**SECOND CAUSE OF ACTION**

[California Fair Employment and Housing Act and California Unruh Civil Rights Act, Cal. Gov. Code § 12955(a) and Cal. Civ. Code § 51 *et seq*]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

38.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

39.     Defendants injured Plaintiff in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

a)  Discrimination and/or harassment on the basis of race and national origin by failing to provide notice to Plaintiff in language other than English. Cal. Gov't Code § 12955(a).

b)  Discrimination and/or harassment on the basis of disability via Defendants' repeated failure to provide adequate accommodation for Plaintiff's chronic medical conditions. Cal. Gov't Code § 12955(a).

c)  Discrimination on the basis of age against a qualified senior citizen. Cal. Civ. Code §51.3(b)(1).

**THIRD CAUSE OF ACTION**

[Violation of Federal Eviction Moratorium]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

40.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

41.     Violations of the CDC's federal eviction order are severe. A willful violation of the eviction moratorium shall result in a fine of no more than $100,000 if the violation does not result in a death. 86 Fed. Reg. at 8025; 86 Fed. Reg. at 16738 (both citing 18 U.S.C.A. §§ 3559, 3571; 42 U.S.C.A. § 271; and 42 C.F.R. 70.18).

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

42.   The Defendants, by wrongfully seeking to evict Plaintiff during the effective dates of the CDC's COVID-19 pandemic eviction moratorium, have violated the federal eviction moratorium and are liable for fines of no more than $100,000.

**FOURTH CAUSE OF ACTION**

[Violation of California State Eviction Moratorium]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

43.   Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

44.   The California State Eviction Moratorium provides that, if a landlord locks a tenant out, removes personal property, or disconnects utility services to evict a tenant, they could face fines between $1,000 and $2,500 per violation. The Defendants, as previously established, have engaged in a multitude of actions that may be considered constructive eviction under the state's eviction moratorium, including disconnecting Plaintiff's utilities on multiple occasions. Therefore, Defendants are liable for each and every violation commencing from March 27, 2020.

**FIFTH CAUSE OF ACTION**

[Violation of Los Angeles City Eviction Moratorium]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

45.   Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

46.   Ordinance Nos.186585 and 186606 of the Los Angeles City Eviction Moratoriums provides that "No property owner shall exercise a No-fault Eviction during the Local Emergency Period" and that "No property owner may withdraw an occupied residential unit from the rental housing market under the Ellis Act." These protections are still in effect at present.

47.   Defendants are liable to Plaintiff for each and every violation of the Plaintiff's rights to not be evicted during the duration of the moratorium, including, but not limited to, the attempting eviction of Plaintiff for no-fault and attempted withdrawal of the 1169 Palms Property.

48.   The Defendants therefore cannot lawfully evict Plaintiff under Ordinance Nos.186585 and 186606.

**SIXTH CAUSE OF ACTION**

[Wrongful Eviction, Cal. Civ. Code §§ 1946.2 and 1947.12]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

49.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

50.     On January 1, 2020, the California Tenant Protection Act went into effect in Los Angeles County (the "Act"). The Act, codified as Cal. Civ. Code §§ 1946.2 and 1947.12, provides, *inter alia*, that a tenant residing in rented property for more than twelve months is entitled to either a rent-waiver or relocation assistance when an evicted notice is issued for "no fault." The eviction notice issued to the tenant must include notice of the tenant's rights to relocation assistance or a rent waiver.

51.     Plaintiff has filed appeal of Defendant's tenant habitability plan. Despite this, Defendants moved for wrongful detainer and obtained a default judgment writ while Plaintiff's appeal was still pending. Therefore, Defendants are now seeking to evict Plaintiff while the matter is stayed under Plaintiff's appeal of Defendant's tenant habitability plan.

52.     Defendants failed to provide proper notice to Plaintiff under Cal. Civ. Code § 1946.2 by failing to notify him of his rights to either a rent-waiver or relocation assistance. In addition, Defendants have wrongfully evoked the no-fault provisions of the Act during the COVID-19 pandemic, including eviction moratoriums on the Federal, State, and City levels. Therefore, Defendants would not be permitted to evict Plaintiff under the Act *even if* notice under Cal. Civ. Code § 1946.2 was proper.

**SEVENTH CAUSE OF ACTION**

[Abuse of Process]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

53.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

54.     Defendants attempted to harm Plaintiff through inappropriate legal process. Cal. Civ. Code § 418.10(c) provides, in part, that if a motion is denied by the Court that "within 10 days after service upon him or her of a written notice of entry of an order of the court denying his or her

motion…may petition an appropriate reviewing court for a writ of mandate to require the trial court to enter its order quashing the service of summons or staying or dismissing the action."

55.     Counsel for Plaintiff filed a Notice of Filing of Appeal and Automatic Stay related to its own Motion to Quash on June 4, 2021.

56.     Defendant, despite it being within 10 days of Plaintiff's Motion to Quash, sought and obtained a default judgment against Plaintiff on June 8, 2021.

57.     Defendants have misused the power of the Court for the purposes of perpetuating an injustice against Plaintiff, in this case seeking default judgment while Plaintiff has appealed its own Motion to Quash. In particular, Rosario has knowingly failed to respect Plaintiff's due process rights. *See S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 41 [176 Cal.Rptr.3d 567]. Defendants have engaged in said actions with the ulterior motive of converting Plaintiff's residence into high-value rental property. *See Coleman v. Gulf Insurance Group* (1986) 41 Cal.3d 782, 792 [226 Cal.Rptr. 90, 718 P.2d77].

58.     Defendants have intentionally used the legal system to harm the Plaintiff, and as a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been damaged as alleged herein.

### EIGHT CAUSE OF ACTION

[Violation of Los Angeles Tenant Anti-Harassment Ordinance, Los Angeles Tenant Anti-Harassment Ordinance Section 45.33]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

59.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

60.     The Los Angeles Tenant Anti-Harassment Ordinance Section 45.33 (the "Ordinance") prohibits a landlord's knowing and willful course of conduct directed at a specific tenant that seriously alarms or annoys the tenant, and that serves no legitimate purpose. Violations of the Ordinance include, but are not limited to, failure to perform and timely complete necessary repairs and maintenance required by State, County, or local housing, health, or safety laws, refusing to acknowledge or accept receipt of lawful rent payments as established by the usual practice of the parties or applicable law, and engaging in an activity prohibited by federal, state, or local housing anti-discrimination laws.

61.     Defendants have failed to provide timely maintenance and repairs of Plaintiff's property, including, as noted by the LAHCID, including failure to provide adequate fire alarms to Plaintiff, failure to maintain plaster/drywall walls/ceilings in a smooth and sanitary condition, failure to provide and maintain the required central or individual room heating appliance in good repair and operable at all times, failure to provide and/or maintain the required foundation vent or under floor access screens, and failure to maintain the plumbing system in conformity with the code regulations and department approvals in effect at the time of construction.

62.     In addition, Defendants have failed to accept regular rent payments from Plaintiff despite Plaintiff's submission of payment, and have engaged in discrimination on the basis of race, national origin, age, and handicap status against Plaintiff.

63.     As a direct and proximate result of Defendants' violations of the Ordinance, Plaintiff has been damaged as alleged herein.

## NINTH CAUSE OF ACTION

[Intentional Infliction of Emotional Distress]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

64.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

65.     A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff is suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the Defendants' outrageous conduct.

66.     A Defendants' conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the Defendants' conduct must be a" 'intended to inflict injury or engaged in with the realization that injury will result. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050—1051 [95 Cal.Rptr.3d 636, 209 P.3d 963]). It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903-

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

904 [2 Cal.Rptr.2d 79, 820 P.2d 181]).

67.     Defendants conduct towards Plaintiff has been, and continues to be, outrageous. Defendants have placed security cameras outside Plaintiff's house, taking away any semblance of his privacy. Defendants have knowingly limited the ability for Plaintiff to enter his own residence by requiring the handicapped Plaintiff to walk a narrow pathway filled with nails and loose wire in order to reach his front door. Defendants have knowingly placed portable toilets and piles of debris near Plaintiff's house. These knowing harms are by no means exhaustive.

68.     By their own conduct, Defendants intended to cause Plaintiff emotional distress, or alternatively, acted with reckless disregard of the probability that Plaintiff would suffer emotional distress. At a minimum, Defendants knew that emotional distress would likely result from their conduct and gave little to no thought to the probable effects of their conduct.

69.     Defendants' conduct as alleged herein proximately caused Plaintiff severe emotional distress.

## TENTH CAUSE OF ACTION

[Negligent Infliction of Emotional Distress]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

68.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

69.     Plaintiff has suffered, and continue to suffer, severe and extreme emotional distress as a direct result of Defendants' negligent behavior. Defendants have placed portable toilets, debris, and other noxious materials in the direct proximity of Plaintiff's residence, and agents of Defendants have urinated and defecated in front of Plaintiff's residence. At a minimum, Defendants have negligently inflicted harmed on Plaintiff by failing to monitor its own construction site and ensure Plaintiff does not suffer harm. The Plaintiff, as a result, has suffered emotional harm in the form of reduced quality of life, reduced sleep, and exposure to noxious chemicals and smells.

70.     The harmed suffered by Plaintiff is a direct and proximate result of Defendants' negligent conduct.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

**ELEVENTH CAUSE OF ACTION**

[Breach of the Implied Covenant of Good Faith and Fair Dealing]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

71.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

72.     Defendants had a duty to exercise reasonable care. In committing the acts herein alleged, Defendants wrongfully, and in violation of the implied covenant of good faith and fair dealing contained in all contracts, failed to provide Plaintiff with a habitable and safe place of residence.

73.     Plaintiff began made rental payments to Defendants following Schwartz's purchase of the 1169 Palms Property in 2015. Plaintiff, as a first-generation immigrant, was and continues to be in an uneven bargaining position in relation to the Defendants. Plaintiff made payments to Defendants to secure a place of abode, emotional tranquility, and peace of mind, and to avoid a need to move from place to place. Plaintiff made rental payments under the assumption that Defendants would act honestly, in good faith and consistent with their statutory obligations and/or their agreement with Plaintiff.

74.     Defendants have failed to engage Plaintiff in good faith. Plaintiff made rental payments to Defendants, and Defendants refused to accept them. Defendants then began to engage in novel legal strategies to evict Plaintiff for no cause during a global deadly pandemic. As a result of the direct and proximate result of said conduct by Defendants, Plaintiff suffered physical discomfort, annoyance, health problems, severe emotional distress, and property loss/damage.

75.     In doing the acts herein alleged, Defendants acted with oppression, fraud, despicably, willfully, maliciously and in conscious disregard of Plaintiff's rights of tenancy, and Plaintiff is entitled to punitive damages in an amount to be ascertained at the time of trial.

**TWELFTH CAUSE OF ACTION**

[Violation of the Ellis Act, Cal. Gov. Code §7060.4]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

76.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

77.     Cal. Gov. Code §7060.4 mandates that a landlord must give at least one-years notice under the California Ellis when the tenant is a senior (age 62) and/or disabled. A disabled person under the Ellis act means "having a condition that limits a major life activity". *See* Cal. Gov. Code § 12955.3. In addition, under Cal. Health and Safety Code § 50072, a handicapped is defined, *inter alia*, as "suffering from an orthopedic disability impairing personal mobility." The Plaintiff has, and currently suffers from, a debilitating orthopedic condition that impairs his ability to walk. Therefore, the Plaintiff is considered both disabled and handicapped for the purposes of Ellis Act protections, and is entitled to one-years notice of eviction.

78.     Plaintiff was not given a one-year notice of eviction. Plaintiff is over the age of 62 and is disabled for the purposes of applicability of the Ellis Act due to his mobility issues, psoriasis, and diabetes.

79.     Defendants have knowingly attempted to evict the Plaintiff despite him not receiving proper notice under the Ellis Act. Subsequently, Plaintiff cannot legally be evicted from his residence at this time.

**THIRTEENTH CAUSE OF ACTION**

[Constructive Eviction]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

80.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

81.     As a direct and proximate result of the outrageous tortious conduct of Defendants, Defendants substantially and materially interfered with Plaintiff's peaceable and quiet use of his residence.

82.     As a direct, proximate, and foreseeable result of said constructive eviction by

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

Defendants, Plaintiff suffered actual, special, and general damages.

83.     The aforementioned acts of Defendants were willful, wanton, deliberate, malicious, obstinate, oppressive, despicable, and done in conscious disregard of Plaintiff's rights, thereby justifying an award of substantial exemplary and punitive damages in an amount to be ascertained at the time of trial.

**FOURTEENTH CAUSE OF ACTION**

[Temporary Restraining Order, Preliminary and Permanent Injunction]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

84.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

85.     Unless enjoined by the Court, Defendants will unlawfully burden Plaintiff by unlawfully evicting him from his current residence.

86.     Injunctive relief is necessary to prevent the irreparable denial of Plaintiff's rights

**FIFTEENTH CAUSE OF ACTION**

[Declaratory Relief]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

87.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

88.     Plaintiff contends that Defendants have caused and will continue to cause unlawful harm to Plaintiff.

89.     Plaintiff seeks declaratory relief stating that (a) Plaintiff is considered elderly for the purposes of Ellis Act protection; (b) Plaintiff is considered disabled and/or handicapped for the purposes of Ellis Act protection; (c) that the Defendants' 3-day notice to vacate was defective on face; (d) that the Defendants' unlawfully filed an unlawful detainer against Plaintiff; (e) that the Defendants' attempted eviction of Plaintiff is unlawful; (f) that the Defendants have violated federal, state, and city eviction moratoriums, (g) that the state court lacked jurisdiction to enter default judgment while appeal of tenant habituality plan stayed the implementation pending appeal, and (h) that Defendants have provided no basis for lawful eviction.

## SIXTEENTH CAUSE OF ACTION

[Breach of Implied Covenant of Quiet Enjoyment, Cal. Civ. Code § 1927]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

90.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

91.     Defendants have repeatedly tried to evict Plaintiff through novel and illicit methods, including Ellis Act Evictions in violation of Los Angeles City ordinances and through constructive eviction in the form of, *inter* alia, a reduction in access by Plaintiff to his residence.

92.     Defendants' actions herein have resulted in Plaintiff being unsure of his ability to continue to live safely and quietly at his residence.

93.     By doing the acts herein, Defendants have breached the implied covenant of quiet enjoyment pursuant to Cal. Civ. Code § 1927 with respect to the tenancy established between Plaintiff and Defendants.

## SEVENTEENTH CAUSE OF ACTION

[Violation of Civil Rights Act of 1866]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

94.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

95.     By doing the acts complained herein, Defendants have violated the Plaintiff's rights to fair housing under the Civil Rights Act of 1866, 42 U.S.C. 1982, in that Defendants denied Plaintiff the opportunity to rent, use, or enjoy housing because of their race, color, national origin, and/or religion.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

## **PRAYER FOR RELIEF**

Plaintiff prays this Court enter judgment as follows:

1.      Declare that the discriminatory practices of Defendants as set forth above violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*; California Fair Employment and Housing Act, Cal. Gov. Code § 12955(a), the California Unruh Civil Rights Act, Cal. Civ. Code §51 *et seq.*, and the Civil Rights Act of 1866.

2.      Declare that the Defendants are in violation of Federal, California State, and Los Angeles City Eviction Moratoriums.

3.      Enjoin Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of the Defendants from continuing to discriminate against Plaintiff on the basis of race, national origin, age, and handicap status.

4.      Order that Plaintiff be permitted to remain in his residence, at minimum, until all applicable eviction moratoriums are lifted.

5.      Award compensatory damages to Plaintiff.

6.      Award punitive damages to Plaintiff.

7.      Award declaratory relief to Plaintiff

8.      Award injunctive relief to Plaintiff

9.      Award any other such damages that may be permitted under all of the above federal, state, and local statutes and regulations.

10.      Award Plaintiff reasonable attorneys' fees and costs in this action.

11.      Award all such other relief that the Court deems just.


Dated: July 12, 2021                          */s/Perry C. Wander*
                                                       Perry C. Wander

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial for all claims and issues to which the right to jury trial exists.

Dated: July 12, 2021                                    */s/Perry C. Wander*

Perry C. Wander

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**