**LAW OFFICES OF PERRY C. WANDER**
Perry C. Wander, Esq. (SBN: 102523)
9454 Wilshire Boulevard, Penthouse,
Beverly Hills, California 90212
Telephone: 310-274-9985
Facsimile:  310-274-9987
Email: pcwlaw@msn.com

Attorney for Plaintiff Victorio Campos

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VICTORIO CAMPOS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>1169 PALMS, LLC, a limited liability company; PENMAR/PALMS LLC, a limited liability company, ROSARIO PERRY, an individual, ROSARIO PERRY, A PROFESSIONAL LAW CORPORATION, a corporation, STEVEN H. SCHWARTZ, in his individual and official capacity, and DOES 1-20,<br><br>Defendants. | Case No.: 2:21-cv-05625-JFW-KS<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, INJUNCTIVE RELIEF:**<br><br>(1) Violation of Fair Housing Act, 42 U.S.C. § 3601 et seq<br>(2) Violation of California Fair Employment and Housing Act, Cal. Gov. Code § 12955(a)<br>(3) Violation of Los Angeles City Eviction Moratorium, Ordinance Nos.186585 and 186606<br>(4) Wrongful Eviction, Cal. Civ. Code §§ 1946.2 and 1947.12<br>(5) Abuse of Process<br>(6) Violation of Los Angeles Tenant Anti-Harassment Ordinance, Los Angeles Tenant Anti-Harassment Ordinance Section 45.33<br>(7) Intentional Infliction of Emotional Distress<br>(8) Negligent Infliction of Emotional Distress<br>(9) Violation of the Ellis Act, Cal. Gov. Code § 7060.4<br>(10) Quiet Title (Leasehold Interest)<br>(11) Specific Performance<br>(12) Declaratory Relief<br>(13) Breach of the Implied Covenant of Quiet Enjoyment, Ca. Civ. Code §1927<br>(14) Violation of Civil Rights Act of 1866<br>(15) Violation of Tenant Habitability Program (LAMC Sec 152 et seq.)<br>(16) Retaliation (Cal. Civ. Code § 1940.35). |

1

Plaintiff, VICTORIO CAMPOS (hereinafter "Campos" or "Plaintiff"), hereby alleges, based upon information and belief, against Defendants 1169 PALMS, LLC, PENMAR/PALMS LLC, ROSARIO PERRY, ESQ. ("Rosario"), ROSARIO PERRY, A PROFESSIONAL LAW CORPORATION ("Rosario PLC"), and STEVEN H. SCHWARTZ ("Schwartz") (collectively, "Defendants") as follows:

**<u>NATURE OF THE CASE</u>**

1.      This action arises from a dispute over possession of residential rental property located at 1809 Penmar Avenue, Venice, California, in the City of Los Angeles consisting of 7 rental units, including one occupied by Plaintiff since 1998.

2.      The Defendants conspired to unlawfully displace all the tenants, from their rent-stabilized apartments, including Plaintiff in order to demolish the existing structure and build new condominiums or luxury rental units with a market rent at least 500 percent (500%) higher than what was being collected from the existing tenants.

3.      The landlord first attempted to use fear and intimidation to displace the existing tenants.  This tactic was successful in displacing all the tenants but the Plaintiff, who was the sole hold-out. Then the landlord resorted to the Ellis Act, to displace the Plaintiff by removing the property from the rental market.  However, after the landlord served on Plaintiff a 120-day notice to quit, the landlord discovered Plaintiff was entitled to a one-year notice because he was over 62 years old and disabled.  Landlord also discovered there was a moratorium in Los Angeles preventing the eviction of a tenant under the Ellis Act until January 2022.

4.      Rather than delay landlords re-development project for what would have been at least 12 months, and in order to circumvent the moratorium on Ellis Act evictions, landlord sought permission from the city to temporarily displace Plaintiff in order to remodel the Plaintiff's apartment by submitting to the city a Tenant Habitability Plan (THP) which the city approved.

5.      The THP required the Plaintiff to vacate the premises during the <u>remodeling</u> of his unit, ***and the right to return to his rent-controlled unit after the remodeling, at the same rental rate.***

6.      Plaintiff was served another notice to quit, this time as part of the THP.  However, the notice to quit served by the defendants on Plaintiff failed to strictly comply with the

requirements of LAMC 151.09C.3, which rendered the notice void as a matter of law.  Plaintiff did not vacate and landlord filed an unlawful detainer action.

7.      Plaintiff retained pro bono counsel through Bet Tzedek and filed a Motion to Quash based on the defective notice to quit.

8.      Plaintiff's filing of the Motion to Quash triggered an automatic stay under CCP section 4118.10 et seq. prohibiting the landlord from taking the tenant's default, and extending the time to plead until five days after service of the written notice of entry of the order denying the Motion Quash. CCP section 418.10 subdivision (c) extends the time even further if a petition for writ of mandate based on the denial of the motion to quash is denied by the appellate court.

9.      Despite Plaintiff having retained counsel who appeared in the unlawful detainer action by way of a motion to quash, the landlord's counsel engaged in a strategy of filing multiple Requests to Enter Default against the Plaintiff.  This included a noticed motion to enter default, an ex parte application to enter default, and at least two requests to enter default filed with the clerk, thereby violating the sacrosanct automatic stay provisions under CCP 4118.10 et seq.

10.      The clerk erroneously entered default against Plaintiff during the period of the automatic stay and Plaintiff was locked out by the sheriff, having never received notice of the impending lock-out.  The apartment building was demolished a few days later.

11.      Defendants' actions constituted willful violations of federal, states, and local stays on evictions during the COVID-19 pandemic, and Defendants abused the legal system to deprive the Plaintiff of his rent-controlled apartment, in violation of Federal and State law.

12.      Plaintiff seeks monetary, declaratory, and injunctive relief against Defendants for Defendants' unlawful discrimination against Plaintiff, an elderly, disabled, Latino tenant who was living in a rent-controlled apartment in the City of Los Angeles for over 20 years.

## **JURISDICTION AND VENUE**

13.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal law claims and arise out of a common nucleus of related

facts. Plaintiff's state law claims are related to Plaintiff's federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

14.     Venue is proper in the Central District of California because Defendants 1169 Palms, LLC, Penmar/Palms LLC, and Rosario PLC have their principal place of business in the district and Defendant Schwartz's primary residence is in the district. Rosario, in his official capacity, is employed within the district. In addition, the subject Property is located wholly within the district.

## PARTIES

15.     Plaintiff, Victorio Campos, is a long-term resident of Venice, California. Campos has rented a residence located at 1809 Penmar Ave, Venice, California 90291 ("Plaintiff's Residence") since at least 2010.

16.     Defendant, Penmar/Palms LLC is a limited liability company registered and active with the Secretary of State of California at 1910-A Montana Avenue, Santa Monica, California 90403. Defendant, Steven H. Schwartz is listed as its sole member.

17.     Defendant, 1169 Palms, LLC, is a limited liability company registered and active with the Secretary of State of California at 1910 Montana Avenue, Santa Monica, California 90403, and is the successor in interest of Penmar/Palms, LLC

18.     Defendant, Steven H. Schwartz is an individual residing, upon information and belief, at 1910 Montana Avenue, Santa Monica, California 90403, and is the sole member of Penmar/Palms, LLC and 1169 Palms, LLC.

19.     Defendant, Rosario PLC. is a California law corporation, registered and active with the Secretary of State of California at 312 Pico Boulevard, Santa Monica California, 90405. Defendant Rosario (CA Bar No. #55061) is Rosario PLC's partner and is employed at the same address as Rosario PLC. All references to Rosario PLC are to both Rosario and any and all other attorneys and/or agents of Rosario PLC, including, but not limited to, one Vano D. Abesadze, Esq. (CA Bar No. #316489).

20.     Each Defendant was, in doing the things complained of, was the agent of its co-Defendants herein and acting within the scope of said agency and/or representation, and each Defendant is jointly and severally responsible and liable to Plaintiff for the damages alleged.

# **FACTS**

### A. *Plaintiff's Background*

21.     Plaintiff, Victorio Campos ("Tenant", "Plaintiff", "Campos") is a 63-year-old male that has resided at the address of 1809 Penmar Ave, Venice, California 90291 since at least 2010. Campos is of Hispanic origin and a naturalized citizen of the United States. His primary language is Spanish and speaks English as a second language. Campos is head of his household, as he works full-time and lives alone. Plaintiff initially initiated this matter in pro per, and is being assisted in this case *pro bono* by counsel.

22.     Campos suffers from a variety of health conditions that are relevant to this case. Campos suffers from an abnormal gait which inhibits his ability to walk at a normal pace. Campos has suffered, and continues to suffer, from slow gait speed, short stride length, increased stride width, and increased time in double limb support during usual path walking, among other symptoms. Campos, as a result, requires the use of a walking cane in order to walk, and has difficulty traversing narrow paths and stairs efficiently or expediently.

23.     Campos additionally suffers from Psoriasis, an immune disease resulting in inflammation of the skin, that is commonly exacerbated by environmental factors such as stress and exposure to contaminants. Campos additionally states he suffers from diabetes and a variety of additional health complications.

24.     Campos is considered elderly and handicapped under Federal and California State Law for the purposes of this complaint, as he is a head of household, above the age of 60, and suffers from an orthopedic disability impairing personal mobility. *See* 24 C.F.R. §§ 100.300 – 100.308. *See also* Cal. Health and Safety Code § 50067 and 50072.

### B. *History of 1809 Penmar Property*

25.     At all relevant times herein, Campos was in possession of an apartment in the 7-unit residential rental property located at 1809 Penmar Avenue, Venice California, in the city of Los Angeles (the "Property"), pursuant to a written lease agreement dated July 1, 1998.   At the expiration of the initial lease term, the tenancy converted to month-to-month. A true and correct copy of the lease is attached hereto as **Exhibit A**.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

26.     The legal description of the subject Property is Tract TR 6250, Map M B 65-68, Block None, Lot 46, Assessor Parcel No. (APN) 4243002065 in the city of Los Angeles.   The subject Property is commonly known as 1809 Penmar Ave., Venice, California 90291

27.     Defendant Schwartz purchased the 1809 Penmar property in July 2005 from non-parties Durley Park Management Hale Casey, and Nguyen Mylene. Schwartz, prior to the purchase in July 2015, registered Penmar/Palms LLC with the office of the California Secretary of State. Upon information and belief, Penmar/Palms LLC was utilized for part of the sales transaction. In February 2020, Schwartz registered 1169 Palms, LLC with the office of the California Secretary of State. Subsequently, between February and March 2020, Schwartz transferred his ownership of the 1809 Penmar property to 1169 Palms, LLC via grant deed.

28.     Prior to 2015, the 1809 Penmar property consisted of at least seven housing units that were originally built in approximately 1937. Each unit had approximately one bed and one bathroom.

29.     Upon information and belief, Defendant Schwartz, through Penmar/Palms LLC, began planning to sub-divide and develop the 1809 Penmar property after purchase of the property in 2015.

30.     Between 2016 and 2018, Defendant Schwartz, through Penmar/Palms LLC, informed the residents of the 1809 Penmar property, including Plaintiff, that the property would be redeveloped into luxury apartments.

31.     The redevelopment of the 1809 Penmar property commenced in approximately 2017. Upon information and belief, all residents at the 1809 Penmar property aside from Plaintiff voluntarily vacated their residences.

32.     Construction on the 1809 Penmar property commenced after multiple other tenants on the property vacated their premises. It was at this time that Plaintiff began to suffer a drastic decrease in his quality of life as a result of Defendants' construction. The below section contains a non-exhaustive list of the harms imposed by Defendants on Plaintiff following commencement of construction:

a) <u>Impaired Access and Escape Routs</u>. Constriction of a narrow access path into Plaintiff's home, approximately four-feet wide, that goes through and underneath active construction zones. This access path had multiple nails sticking into the

1   walkway into Plaintiff's residence. In addition, the walkway had multiple wires

2   hanging down into Plaintiff's walking path. Plaintiff's mobility issues made navigation

3   of this path (the only way to get into his home) challenging and detrimental to his

4   ongoing health conditions. See photographs attached hereto as **Exhibit I** and

5   incorporated herein.

6   b)  Shutdown of Laundry Facilities. Permanent shutdown of on-site laundry facilities.

7   Plaintiff, previously accustomed to using this laundry site, was forced to travel to

8   outside laundry facilities. This additional travel caused additional aggravation of

9   Plaintiff's ongoing medical conditions.

10  c)  Utility Service Disruptions.  Multiple service disruptions to Plaintiff's water, heat, and

11  gas as a direct result of ongoing construction. The City of Los Angeles Housing

12  Community Investment Department ("LAHCID") was forced to issue an Order to

13  Restore Utilities in March 2020, noting that an inspection of Plaintiff's residence

14  indicated that it "lack[ed] the required gas service required for hot water and functional

15  heating appliance" pursuant to Los Angeles Municipal Code.

16  d)  Municipal Code Violations.  Multiple violations of the Los Angeles Municipal Code

17  City of Los Angeles Housing Community Investment Department were noted in March

18  2020, including failure to provide adequate fire alarms to Plaintiff, failure to maintain

19  plaster/drywall walls/ceilings in a smooth and sanitary condition, failure to provide

20  and maintain the required central or individual room heating appliance in good repair

21  and operable at all times, failure to provide and/or maintain the required foundation

22  vent or under floor access screens, and failure to maintain the plumbing system in

23  conformity with the code regulations and department approvals in effect at the time of

24  construction. *See* Notice and Order to Comply attached hereto as **Exhibit K** and

25  incorporated herein as if fully stated/

26  e)  Impaired Use of Common Area.  Placing of metal gates 3 to 4 feet from the Plaintiff's

27  front door, limiting the outdoor area to which Plaintiff had access. Plaintiff could no

28  longer use outdoor patio furniture or sit outside comfortably.

7

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

f) <u>Foul Odors</u>.  Placing of portable toilets several feet from Plaintiff's front door, causing noxious smells to ruminate into Plaintiff's residence.

g) <u>Dirty Conditions</u>.  Placing of a pile of dirt and concrete, approximately 5 to 7 feet, from Plaintiff's residence. Particulate matter from this pile of dirt and concrete would blow into Plaintiff's residence on windy days, aggravating Plaintiff's psoriasis and causing breathing difficulties.

h) <u>Hazardous Conditions</u>.   Removal of lighting from outdoor areas of Plaintiff's residence, causing Plaintiff to be fearful for his safety at night.

i) <u>Unsanitary Conditions</u>.  Urination and defecation on the sidewalk in front of Plaintiff's residence by construction workers employed by Defendants.

j) <u>Invasion of Privacy</u>.  Installation of security cameras on the outside of Plaintiff's property without Plaintiff's permission focused directly on Plaintiff's residence.

k) <u>Harassment</u>.   Security guard knocking on Plaintiff's door past 9:00 P.M. without prompting to "check" on Plaintiff. Construction workers yelling and making loud noises in the early mornings, inhibiting the Plaintiff from being able to sleep on the days he did not have work.

33.   Plaintiff tried on multiple occasions to communicate his concerns about the conditions of the Property to Defendants, but most, if not all concerns, went unheeded.

34.   The subject Property is subject to the Los Angeles Rent Stabilization Ordinance, Los Angeles Municipal Code, Ch. XV, art. I, § 151.00 et seq. ("RSO", "LAMC") which significantly limits the grounds for evicting a tenant.  If grounds do not exist to evict a tenant, a landlord can regain possession by removing the property from the rental market pursuant to the Ellis Act.

**LANDLORD ATTEMPTS TO REGAIN POSSESSION OF SUBJECT PROPERTY UNDER THE ELLIS ACT BUT PROVES TO REQUIRE UNDESIRABLE DELAY DUE TO ONE-YEAR NOTICE REQUIREMENT AND MORATORIUM.**

35.   Intending to redevelop the Property into high-priced rental units or condominiums, the Landlord served Plaintiff a 120-Day Notice to Quit pursuant to the Ellis Act.

36.     The Ellis Act is a provision in California Law (Government Code section 7060-7060.7) that provides landlords in California with a legal way to go out of the rental business when property subject to the RSO is occupied by a tenant.

37.     The Los Angeles Housing + Community Investment Department ("HCIDLA") is an administrative department formed by the City of Los Angeles which has oversight over the Ellis Act.

38.     HCIDLA is tasked with implementing human services, housing, and community programs, promoting livable and prosperous communities through the development and preservation of decent, safe, and affordable housing, neighborhood investment and social services.

39.     HCIDLA also created the Accessible Housing Program (AcHP) the stated goal of which is to ensure that people with disabilities have an equal opportunity to rent, enjoy, and use affordable rental housing funded by the City of Los Angeles or the Community Redevelopment Agency of the City of Los Angeles.

40.     Under the Ellis Act, Landlords who plan to withdraw or demolish rental property shall notify LAHD of an intention to withdraw a rental unit from rental housing use. The Notice of Intent to Withdraw shall be filed with the Department whether the rental unit(s) to be withdrawn or demolished are occupied or vacant at the time of filing.

41.     Defendant, Steven Schwartz, through his shell limited liability company 1169 Palms, LLC, filed with the city of Los Angeles a Notice of Intent to Withdraw rental units from the residential rental market, including the subject  Property, in accordance with the Ellis Act. (*Govt. Code* 7060 et seq.), and on November 19, 2020, served upon Plaintiff a 120 Day Ellis Notice to Quit by first class mail.  However, this 120 Day Notice was defective because Ellis Act evictions require a one-year notice for senior and disabled tenants (known as "Qualified" Tenants), 120 days for all others. Government Code Section 7060.4. (b).

42.     The Ellis  Act also provides for relocation assistance of $21,200 for Qualified Tenants which the landlord was required to deposit into escrow within 15 days of serving the written notice of termination, pursuant to LAMC §151.09G.  Instead of depositing this sum into escrow, the landlord requested a hearing with the LAHCID.

43.     LAHCID held that Mr. Campos was elderly, 62, disabled, and thus a qualified tenant. A qualified tenant is any tenant who on the date of service of the written notice of termination is 62 years of age or older; handicapped, as defined in Section 50072 of the California Health and Safety Code, or disabled, as defined in Title 42 of the United States Code, Section 423; and disabled and thus entitled to the $21,200 in relocation assistance.

44.     After losing the hearing with the City, the landlord filed a Writ of Mandate claiming that LAHCID exceeded its authority in finding that Mr. Campos was entitled to the $21,200 in relocation assistance, which the landlord also lost.

45.     Nevertheless, Campos timely elected to extend his tenancy for an additional year pursuant to LAMC §151.09 C.5 as he was at least 62 years of age and disabled.

46.     The defective Ellis Act Notice to Quit and the one-year delay caused by the notice requirement were not the only obstacles facing the landlord.  Since the onset of Covid-19, protections against evictions for reasons other than nonpayment of rent were passed by the City of Los Angeles, the city incorporated and adopted the County of Los Angeles eviction moratorium as it applies to Ellis Act residential tenants.

47.     The Ellis Act Moratorium provided that owners may serve requisite notices for an Ellis Act eviction but shall not file an eviction based on removal of a unit from the market under the Ellis Act until April 1, 2022. The result of this moratorium was to create a huge delay in the development plans of the landlord, and required a new eviction strategy.

48.     During this entire time, the landlord and its counsel engaged in a course of conduct to harass, intimidate, and bully Mr. Campos to vacate the apartment. They were extremely successful in this strategy, forcing out all the other tenants in the building. Mr. Campos was the sole remaining tenant in the apartment building. This strategy included repeatedly turning off utilities, leaving Mr. Campos without heat, or hot water, and setting up video camaras to monitor his activities.  A true and correct copy of the photos showing the construction and interference with the quiet enjoyment of the premises and harassment of the tenant are attached hereto as **Exhibit I.**

**LANDLORD CIRCUMVENTS THE NOTICE AND MORATORIUM REQUIREMENTS OF THE ELLIS ACT BY APPLYING FOR A TENANT HABITABILITY PLAN TO REGAIN POSSESSION OF THE SUBJECT PROPERTY WHEN THE THP PROGRAM IS INTENDED FOR THE TEMPORARY RELOCATION OF A TENANT DURING REMODELING BUT LANDLORDS TRUE INTENTION IS TO PERMANENTLY DISPLACE TENANT AND REDEVELOP THE SUBJECT PROPERTY**

49.     Since the landlord was forced to abandon his Ellis Act strategy for regaining possession of Plaintiff's rent-controlled apartment, due to the eviction moratorium banning Ellis Act evictions, Defendants came up with a different strategy. A loophole in the ban against evictions during Covid, the city of Los Angeles, Tenant Habitability Plan.

50.     With rent prices rising in Southern California and inventory at a premium, rent-stabilized apartments in Los Angeles are dwindling. Some landlords have gone to great lengths to push those rent-stabilized tenants out, in favor of market-rate renters. And though laws exist to curtail such unfair evictions, other landlords are finding loopholes, according to the Los Angeles Times.

51.     The intent of the Tenant Habitability Program is to protect tenants from untenantable housing conditions and/or forced permanent displacement. If a landlord plans to renovate, repair, or alter a building subject to the Rent Stabilization Ordinance (RSO), the landlord can apply to have a Tenant Habitability Plan approved by the HCIDLA.

52.     Under the city's "tenant habitability plan," property owners are discovering they can encourage evictions by undertaking long renovations, the Times reported. Apartment building owners are required to file the plan when they want to perform major renovation on the property. As part of the renovation work, the landlord must specify where the tenants will be relocated, if it's necessary. Tenants can either remain in the building, stay at a hotel, or temporarily move to a "comparable unit."

53.     Yet by pushing a tenant to move to a not-so-comparable unit, or dragging out renovations for longer than expected, landlords can push tenants out of their rent-stabilized units, according to the report. https://www.latimes.com/local/lanow/la-me-ln-tenant-habitability-plan-rent-stabilized-housing-landlord-evict-20190514-story.html.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

54.     HCIDLA granted the landlord's request to perform rehabilitation and construction of the subject property and submitted to the City a Tenant Habitability Plan (THP) which the city approved. The THP required the tenant to vacate the premises for remodeling of his unit, ***and the right to return to his rent-controlled unit after the remodeling, at the same rental rate.***

55.     The landlord applied for a building permit with the city, which was issued on 2/21/2020 as Permit #18014-20000-04859, the work description was listed as *"completely remove all interior and windows, reconfigure kitchen/living, 1/2 bathroom and add irregular shape 24' x 23.5' 2nd floor bedroom. Project include reframing remaining roof and underpinning footing for current code compliant."* This permit was issued to do remodeling, not demolition of the apartment unit.

56.     The landlord then served a three-day Notice to Quit on Campos which was solely based on the approved THP. When the tenant failed to move the landlord, 1169 Palms, filed an unlawful detainer action, through their unlawful detainer counsel defendant Rosario Perry. A true and correct copy of the unlawful detainer action is attached hereto and made a part hereof as **Exhibit B.**

57.     Mr. Campos sought judicial review of this determination pursuant to California *Code of Civil Procedure* section 1094.6 based on the fact that he needed an accommodation to move based on his age and disability, had no money to move, was physically unable to pack his property, and most importantly the governor issued a shelter in place order for Covid,  and Mr. Campos is extremely at risk of dying if he contracts Covid due to his advanced age and multiple underlying medical conditions. Finally, the neighborhood in which he was being forced to relocate is a high crime area in Venice, CA which was also experiencing an explosion in the homeless population.

58.     After the Department accepts the Tenant Habitability Plan, a landlord shall serve a copy of the Tenant Habitability Plan, Notice of Primary Renovation Work, a summary of the provisions of this article and, if applicable, a permanent relocation agreement form on any tenant affected by the Primary Renovation Work.  A true and correct copy of the mandatory form that must be served on the tenant and approved by the city before filing an unlawful detainer action under the THP is attached hereto and made a part hereof as **Exhibit J.**

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

59.     Service of these items shall be provided in the manner prescribed by Section 1162 of the California Code of Civil Procedure and at least 60 days prior to the date on which the Primary Renovation Work and any Related Work is scheduled to begin.

60.     Under the LAMC, if the tenant fails to vacate pursuant to the THP, the landlord must file for approval with HCIDLA a Declaration of Intent to Evict for Failure to Re-Locate Under a Tenant Habitability Plan, obtain a department stamp approving the form, and then the form and attachments referenced in the form must be served on the tenant pursuant to CCP 1161, as part of the Notice to Vacate.

61.     The landlord failed to strictly comply with this requirement, thus the Notice to Vacate is jurisdictionally defective on its face.

62.     The unlawful detainer complaint served on Plaintiff Campos, was unlawful, in that the court lacks subject matter jurisdiction. (Code Civ. Proc., § 430.10 (a). Specifically, the three-day notice to quit failed to strictly comply with the statutory requirements of LAMC 151.09C.3 and CCP 1946.2 (C)(4).

63.     In a California unlawful detainer action, which is an expedited statutory remedy available to landlords in order to regain possession of landlords property quickly, statutory procedures must be strictly adhered to, including the stringent requirements for service, and the notice to terminate the lease (*Stancil v. Superior Court*, 11 Cal. 5th 381 p. 394-395. *Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297 *Kwok v. Bergren* (1982) 130 Cal.App.3d 596, 599–600).

64.     In order to evict a tenant under an approved Tenant Habitability Plan, a Declaration of Intent to Evict for Failure to Re-Locate Under a Tenant Habitability Plan, is required to be served on the tenant pursuant to LAMC 151.09C.3.

65.     Under the RSO, and THP, LAMC 151.09C.3 mandates that a special pre-printed Declaration have the HCIDLA department stamp that the Declaration complies with RSO 151.09.3, which then authorizes the landlord to serve the declaration on the tenant before proceeding with an eviction.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

66.     Since the pre-printed form mandated by RSO 151.09.C.3 was never signed by the HCIDLA, or served on the tenant, as required by the form in the manner prescribed by section 1162 of the Code of Civil Procedure, the eviction of the tenant is unlawful, **and not a protected activity**.

67.     The notice to vacate served by the defendants on Plaintiff failed to strictly comply with the requirements of LAMC 151.09C.3, which renders the notice void as a matter of law. The temporary relocation of a tenant pursuant to the THP shall not constitute the voluntary vacating of that rental unit and shall not terminate the status and rights of a tenant, including the right to reoccupy the tenant's rental unit upon the completion of the Primary Renovation Work and any Related Work. A copy of the notice to quit is attached to Exhibit B herein.

68.     Once the unlawful detainer action was filed, and despite Plaintiff Campos having retained counsel who appeared in the unlawful detainer action by way a motion to quash, the defendants' counsel engaged in a strategy of filing multiple Requests to Enter Default against the Plaintiff.  This included an unprecedented, noticed motion to enter default, an ex parte application to enter default, and at least three separate requests to enter default filed with the clerk.

69.     Plaintiff, Campos filed a motion to quash, based on the defective notice, and, due to Covid, this unlawful detainer action is illegal as it violates the *Tenant Protection Act* of 2019 (AB 1482) banning evictions for rehabilitation of a building and requiring one month relocation assistance. The Tenant Act also specifically states that ***substantial rehabilitation of a building is not a just cause, through January 31, 2021***. The Act also requires one month's rent relocation assistance payment in the case of a no-fault just cause eviction, such as capital improvements, or withdrawal of property from rental market (Ellis), or intent to demolish or substantially remodel). An owner's failure to strictly comply with this subdivision shall render the notice of termination void. On May 28, 2021, the Superior Court denied Campos' motion to quash. A true and correct copy of the minute order, declaration of mailing and postmarked envelope is attached hereto as **Exhibit C.**

**UNPROTECTED ACTIVITY DURING THE EVICTION**

70.     The failure to strictly follow these steps under the THP render the Notice to Quit served on Campos defective, renders the complaint for unlawful detainer unlawful, and as is not *"protected activity".* Furthermore, defendants violated the sacrosanct automatic stay provisions under CCP 4118.10 et seq. in which the filing of a motion to quash triggers an automatic stay prohibiting a default being entered, and extends the time to plead until five days after service of the written notice of entry of the order denying the motion. CCP section 418.10 subdivision (c) extends the time even further if a petition for writ of mandate based on the denial of the motion to quash is denied by the appellate court.

71.     Despite Campos having filed a motion to quash, and petition for writ of mandate, the defendants repeatedly filed default requests with the court, and clerk, hoping that an understaffed, and extremely busy court staff, and clerk's office would allow a default to fall through the cracks.

72.     On May 28, 2021, the court denied Campos motion to quash. The court ordered the clerk to give notice. The court ordered that a responsive pleading to the unlawful detainer complaint be filed within 5 days, but mailed its minute order, thus extending the date by an additional 5 days. A true and correct copy of the notice of ruling and minute order is attached hereto as Exhibit C.

73.     On June 3, 2021, Plaintiff's counsel received a copy of the Court's Minute Order, dated May 28, 2021, by first-class mail, **post-marked June 1, 2021**. That makes the earliest date that a responsive pleading was due was June 10, 2021, calculated as 5 days plus 5 days mailing (from the date it was actually postmarked. Plaintiff's counsel contends it was June 10, 2021, or 10 days from the actual mailing by the clerk of the notice of ruling denying defendant's motion to quash.

**LANDLORD'S ATTORNEY, DEFENDANT ROSARIO PERRY, IGNORES AUTOMATIC STAY AND TAKES A DEFAULT ERRONEOUSLY ENTERED BY CLERK  DURING SETTLEMENT DISCUSSIONS WITH PLAINTIFF'S COUNSEL**

74.     On June 4, 2021, Campos filed a Petition for Writ of Mandate and served a copy of the writ and Notice of stay on defendant Rosario Perry, who was served by email with a copy of the writ of mandate and notice of automatic stay. The email states *"Please see attached Notice of Filing Appeal and Notice of Stay. No response is due until the Superior Court Appellate Department rules*

*on the Writ.  Do not attempt to file any default. The entire case is now stayed."* A true and correct copy of the Notice of Stay that was electronically served on defendant Rosario Perry on June 4, 2021, is attached hereto as **Exhibit E**.

75.     The notice of automatic stay was accepted for filing by the Court, while the writ of mandate was rejected late afternoon on June 4, 2021, *inter alia, as it had to be filed in person at the clerk's office for the Superior Court Appellate department, and not electronically filed.*

76.     On June 7, 2021, Campos filed his Writ of Mandate with the Superior Court Appellate Department The clerk stamped the conformed copy June 4, 2021, and assigned a case number for the appeal. The Unlawful detainer action was now stayed as a matter of law pursuant to California Code of Civil Procedure, 418.10. A true and correct copy of the Petition for Writ of Mandate is attached hereto as **Exhibit D**.

77.     Campos's counsel was electronically served with a second notice of stay on June 7, 2021, that contained the case number together with a conformed filed copy of the writ of mandate, importantly, it was filed prior to the date landlord's counsel emailed Campos's counsel stating that the responsive pleading was due June 7, 2021. During the period of June 7-June 15, Campo's counsel was engaged in settlement negotiations with defendant Rosario Perry. At no time did Mr. Perry ever advise me that he was filing a Request to Enter Default or default Judgment against my client during these emails that were being exchanged regarding terms of a settlement. A true and correct copy of the settlement emails between counsel are attached hereto as **Exhibit H.**

78.     Despite defendant Perry being served twice with a notice of stay and the conformed copy of the filed appeal with case number, and despite admitting that a responsive pleading was due on or before June 7, 2021, while the automatic stay was in effect, defendant Perry electronically filed with the court another request to enter default (and failed to serve Campos counsel with said request), and this time the default clerk, not realizing that stay under CCP 418.10 was in effect, erroneously entered judgment for possession on June 8, 2021 in favor of the landlord against Campos. A true and correct copy of the Request to Enter Default filed in violation of the automatic stay provisions of California Code of Civil Procedure Section 418.10 et seq. is attached hereto and made a part hereof as **Exhibit F**.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

79.     Defendant Rosario Perry wrongfully filed a request to enter default and default judgment, on June 8, 2021, **despite receiving 2 notices of filing appeal and notice of stay, willfully, and <u>intentionally ignoring the automatic stay under CCP 418.10.</u>**

80.     On June 16, 2021, Campo's counsel was served by first class mail a copy of the order from the Appellate Court denying defendants writ of mandate, **filed on June 7, 2021**. Under California Code of Civil Procedure, 418.10 a responsive pleading is due within 10 days, plus 5 days for mailing. Campos's response was due on or before June 26, 2021. A copy of the minute order from the Superior Court Appellate Department is attached hereto as **Exhibit G.**

81.     However, on June 21, 2021, when Campos's counsel attempted to timely file a proposed answer, demurrer, and motion to strike, the filings were rejected because a default judgment and writ of possession had been entered against Defendant.

82.     On June 28, 2021, Campos's counsel requested defendant Rosario Perry to stipulate to set aside the default, but Mr. Perry's office refused to stipulate to set aside the default.

83.     Campos's counsel then filed a motion to set aside the default. The motion had attachments showing the date and time of the filing of the notice of stay and the filed appeal as being prior to June 7, 2021, and thus prior to the default being entered on June 8, 2021. These undisputed filing dates clearly showed the default was **entered while the automatic stay was still in effect**, thus establishing the clerks obvious error, which defendant Rosario Perry now wished to exploit. Unbeknownst to plaintiff and his counsel, Defendant Perry's office turned over the Writ of Possession to the Los Angeles County sheriff's department to immediately serve the writ of possession, in order to evict the Plaintiff before the motion to vacate the default was heard.

**PLAINTIFF IS LOCKED OUT BY SHERIFF BASED ON INSTRUCTIONS PREPARED AND FILED BY DEFENDANTS DURING THE AUTOMATIC STAY AND THE SUBJECT PROPERTY IS DEMOLISHED IN ORDER TO PERMANENTLY DISPLACE PLAINTIFF**

84.     Defendant Rosario Perry wrongfully filed the request to enter default, default judgment, and writ of possession, on June 8, 2021, despite the automatic stay provisions of CCP 418.10.

85.     At no time herein did defendant Rosario Perry, landlord's counsel ever email Campos's counsel notifying him that he did not believe that an automatic stay was in effect and that

he was taking Campos's default.  Nor was Campos's counsel ever emailed the default documents, this is despite the fact that during this very week, multiple emails regarding settlement negotiations were exchanged between Rosario Perry and Campos's counsel, Perry Wander to resolve the case. In fact, Defendant Perry knew that Campo's counsel could not receive electronic service from One Legal to serve counsel with documents. Despite repeatedly notifying defendant Perry of Campos's counsel's inability to receive these electronic service emails from One Legal, defendant's counsel continued to use One Legal for e-service, ensuring that Campos's counsel never received any electronically filed documents, including all of the default documents they purportedly "served".

86.     Ignoring an automatic stay is a breach of defendant Rosario Perry's obligation as an officer of the court, it breaches the rules of professional responsibility, constitutes contempt of Court and a willful failure to obey well-established California law. Taking a default whilst simultaneously having settlement negotiations is an egregious ethical violation by defendant Perry. These unlawful actions collectively, and or independently cannot be deemed protected activity for purposes of a SLAPP motion. Unethical behavior from counsel cannot be condoned. Under CCP 418.10 (d) no default may be entered against the defendant before expiration of his time to plead.

87.     Based on the undisputed evidence that the default was mistakenly entered by the clerk while there was an automatic stay pending in the Unlawful detainer Action, as well as the fact that landlord's attorney, Rosario Perry was in settlement negotiations while simultaneously filing for a default, Plaintiff's counsel was expecting that the landlord would not have the sheriff serve the writ of possession.

88.     Under CCP 418.10 (d), the service and filing of the notice shall extend the defendant's time to plead until 10 days after service upon him or her of a written notice of the final judgment in the mandate proceeding, **(d) No default may be entered against the defendant before expiration of his or her time to plead.**

89.     Despite this clear unambiguous language regarding the automatic stay, the Defendants sought to exploit the default that they had surreptitiously obtained, then turned their attention on a similarly overworked and overburdened Los Angeles County sheriff's department that is tasked with serving the writs of possession and evicting tenants.

90.     On receipt of a writ of possession, the sheriff must either post the notice on the front door of the tenant, or personally serve the tenant with the Notice to Vacate. Thereafter, the tenant has 5 days to vacate, unless an injunction is granted. The Sheriff will serve a 5-Day Notice to Vacate within three business days after receipt of the writ. The eviction occurs as soon as possible after the expiration of the 5-day notice. Since the sheriff was overburdened due the eviction moratoriums expiring, and a floodgate of evictions, this service apparently took a few weeks.

91.     Plaintiff/Tenant is informed, and thereon alleges that after he left for work, the sheriff posted the notice to vacate on his front door.  Knowing that the notice to vacate was posted by the sheriff (because the landlord had video surveillance on Campos apartment), the landlord knew that the posting had occurred, **and to make sure that Campos did not discover that the sheriff posted the notice to vacate, which would have triggered and ex parte application for a stay of the lock out pending the hearing on the motion to vacate the default, than caused the notice to vacate to be removed.**  Five days later, Campos went to work, and on his return found that he had been evicted, and the apartment demolished and bulldozed. His personal property thrown into garbage bags and put into storage, that he now had to pay to retrieve. Upon retrieval of his personal property from the landlord, defendant Schwartz laughed and ridiculed Plaintiff.

92.     On July 14, 2021, defendant Rosario Perry in conspiracy with his client defendant Steven Schwartz, had the sheriff evict Plaintiff from his apartment of 20 years, while he was at work, never having received the notice to vacate, that had been ripped off his front door, ensuring that he would be unable to apply to the court for a stay pending the hearing on his motion to set aside the default, which the court granted.

93.     Campos still has a leasehold interest in the subject property, still has the right to reoccupy the apartment unit when construction is completed, and can seek damages and injunctive relief  against his landlord, and the landlords unlawful detainer counsel, the defendants herein. Unless the court finds that Campos has a leasehold interest and right to reoccupy the property at the same rent, pursuant to the terms and conditions of the tenant habitability plan, defendants will have been able to successfully evict the Plaintiff and deprive him of his rights.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

## PROCEDURAL HISTORY

### A.   *State Court Actions - Eviction During a Pandemic*

93.     Defendants evicted Plaintiff from his residence via a Tenant Habitability Plan, which required Mr. Campos to move out of his apartment, into another apartment not comparable to his current residence. Plaintiff had not been guaranteed that his new apartment would be handicap accessible (a requirement due to Plaintiff's mobility issues) and he feared moving to a neighborhood considered less safe than his current neighborhood for a handicapped senior, with little ability to defend himself if attacked. Concerns raised by Plaintiff to Defendant about having to move during a pandemic have gone unheeded.

94.     The LAHCID ruled in favor the landlord's Tenant Habitability Plan ("THP") in late 2020 and ordered Campos to vacate his residence within 15 days. Plaintiff appealed this decision to LAHCID, and on November 20, 2020, LAHCID upheld the Defendant's Tenant Habitability Plan. Plaintiff then filed a Writ of Mandate on February 18, 2021, seeking judicial review of the LAHCID's determination pursuant to California Code of Civil Procedure § 1094.6 based on the fact that the Defendant never offered one month's rent for relocation, the Plaintiff has no money to move, is unable to pack his personal property due to his disability, and Plaintiff feared exposure to COVID should he be required to move.

95.     Defendants served a defective Three-Day Notice to Quit, and filed an unlawful detainer action on Christmas Eve. The notice also contained a forfeiture of the lease, which would then provide the Defendants with a basis to not pay the tenant any relocation money. A copy of the state court complaint, the monthly rental agreement, and the three-day notice to quit are attached hereto as Exhibit B and incorporated herein as if fully stated.

96.     Counsel for Plaintiff filed its Motion to Quash Summons for Unlawful Detainer on March 10, 2021, in the Superior Court of California, County of Los Angeles. This Motion to Quash was subsequently denied by the state court. The ruling on the motion to quash was mailed to Plaintiff on May 28, 2021. Campos than filed a Petition for Writ of Mandate on June 7, 2021.

97. The superior court appellate department denied the Petition for writ of mandate on June 16, 2021. Campos then filed a demurrer and motion to strike, which were both eventually denied. Campos motion to vacate the default was set aside on May 28, 2021.

**B.**     ***Defendant's Egregious Abuse of Legal Process (and History Therefor)***

98.     A writ of mandate appealing the denial of the Motion to Quash was timely filed on June 4, 2021. The Superior Court Appellate Department denied the appeal on June 16, 2021. However, the clerk of the Court wrongfully entered the Defendants' default on June 8, 2021, 8 days before Plaintiff's responsive pleading being due. Plaintiff attempted to timely file Defendants' demurrer, motion to strike and answer on June 21, 2021, but all documents were rejected due to entry of default by the Court on June 8, 2021.

99.     Plaintiff is now of the belief that the Defendants' law firm, Rosario PLC, by and through its partner Rosario, has abused the legal process to wrongfully evict Plaintiff from his home in the middle of a global pandemic. Plaintiff's counsel advised Defendant Rosario PLC to not serve any writ on Plaintiff at this time, as entered default was improper and Plaintiff is still subject to existing eviction moratoriums. It appears that Rosario, through his firm Rosario PLC, continuously and with malice, pushed the state court clerk to improperly enter default despite pending actions and appeal filed by Plaintiff. In addition, Rosario PLC has contuously failed to email pleadings and litigation documents to Plaintiff's counsel and have instead sent document through physical mail and proprietary software, despite requests by Plaintiff's counsel to only receive documents via email. Plaintiff's counsel at this time was unable to work in a physical office due to the COVID-19 pandemic, so the Defendant's failure to willingly send documents via email is particularly egregious. Rosario PLC also sent multiple *ex parte* commutations to Plaintiff at his address despite knowledge that Plaintiff was represented by legal counsel. Unsurprisingly, Rosario, and his firm, are known in the Los Angeles area of representing slumlords and unscrupulous landlords and developers in novel and unjust evictions cases targeting long-term, low-income, and often minority and elderly tenants in rent-controlled apartment to develop multi-million dollars projects without concern for displacing tenants or trampling on their civil rights. Rosario was previously sued by the City Attorney Consumer Protection Unit for egregious housing discrimination against tenants - Terminating tenancies for

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

discrimination on the basis of race, religion, and national origin, defrauding tenants, many of which were elderly and disabled. Los Angeles Superior Court Case, No. SC094695 (2007). In addition, Rosario is currently Defendant in a civil rights lawsuit before the United States District Court, Central District of California, filed January 27, 2020, which alleges that Rosario "directed and controlled the initial conspiracy and the continuing conspiracy to cover up the conflicts of interest and to defraud TRUE HARMONY of all rights of ownership or title in the property and including rights to cash proceeds of its sale in July of 2011". *See* Case 8:20-cv-00170-JAK-ADS. In sum, this is not the first time Rosario Perry and his firm have been accused of abuse of the legal process for the benefit of slumlords.

## C.   *Procedural History Guide*

100.   The following is a guide of the procedural history of this matter, indicating any and all events relevant to this matter:

| | |
|---|---|
| May 3, 2021 | Defendant filed Motion to Quash |
| May 28, 2021 | Motion to Quash denied |
| June 1, 2021 | Post-mark date for service of denial of Motion to Quash |
| June 4, 2021 | Defendant electronically files and serves Writ of Mandate ("Appeal") of denial of Motion to Quash. |
| June 4, 2021 | Defendant electronically files with court and serves Plaintiff's counsel Notice of Stay and Filing of Appeal. |
| June 7-June 15, 2021 | Plaintiff and Defendant counsel engage in settlement discussions relating to UD. |
| June 8, 2021 | Clerk of the Superior Court enters default against Defendant while automatic stay in effect |
| June 16, 2021 | Appellate Court denies Writ of Mandate. Defendant's counsel is mailed minute order denying Appeal. |
| June 21, 2021 | Defendant's counsel attempts to file proposed answer, demurrer, and motion to strike. Filings REJECTED, as default judgment and writ of possession issued by clerk. |
| June 26, 2021 | Earliest date the automatic stay pending Defendant's appeal could have expired. 10 days from mailing CCP 418.10(c). |
| July 12, 2021 | Defendant files federal civil rights lawsuit against Plaintiff and additional parties |
| July 14, 2021 | Defendant wrongfully evicted from residence. No 5-Day Notice posted on Defendant's door. Notice was removed. |

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

**FIRST CAUSE OF ACTION**

[Fair Housing Act, 42 U.S.C. § 3601 *et seq*]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

101.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

101.    Defendants, have violated the Fair Housing Act, 42 U.S. Code § 3604 by engaging in the following discriminatory practices by discriminating against Plaintiff in the rental of his dwelling on the basis of his disability. 42 U.S. Code § 3604(f)(2)(a). Defendants permanently displaced Plaintiff from his rent-controlled apartment by improperly applying to the City of Los Angeles for a temporary relocation of tenant under the Tenant Habitability Program in order to avoid paying the Plaintiff additional relocation fees entitled to as a disabled tenant and to avoid the extended notice requirement for  disabled tenants under the Ellis Act., causing damages according to proof at trial. .

**SECOND CAUSE OF ACTION**

[California Fair Employment and Housing Act and California Unruh Civil Rights Act, Cal. Gov. Code § 12955(a) and Cal. Civ. Code § 51 *et seq*]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

102.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

103.    Defendants injured Plaintiff in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

a)  Discrimination and/or harassment on the basis of race and national origin by failing to provide notice to Plaintiff in language other than English. Cal. Gov't Code § 12955(a).

b)  Discrimination and/or harassment on the basis of disability  when Defendants permanently displaced Plaintiff from his rent controlled apartment by improperly applying to the City of Los Angeles for a temporary relocation of tenant under the Tenant Habitability Program in order to avoid paying the Plaintiff additional relocation fees entitled to as a disabled tenant and to avoid the extended notice requirement for disabled tenants under the Ellis Act., causing damages according to proof at trial.. Cal. Gov't Code § 12955(a).

c) Discrimination on the basis of age against a qualified senior citizen when Defendants permanently displaced Plaintiff from his rent controlled apartment by improperly applying to the City of Los Angeles for a temporary relocation of tenant under the Tenant Habitability Program in order to avoid paying the Plaintiff additional relocation fees entitled to as an elderly tenant and to avoid the extended notice requirement for elderly tenants under the Ellis Act., causing damages according to proof at trial... Cal. Civ. Code §51.3(b)(1).

**THIRD CAUSE OF ACTION**

[Violation of Los Angeles City Eviction Moratorium]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

104.   Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

105.   Ordinance Nos.186585 and 186606 of the Los Angeles City Eviction Moratoriums provides that "No property owner shall exercise a No-fault Eviction during the Local Emergency Period" and that "No property owner may withdraw an occupied residential unit from the rental housing market under the Ellis Act."

106.   Defendants are liable to Plaintiff in an amount to be proven at trial for each and every violation of the Plaintiff's rights to not be evicted during the duration of the moratorium, including, but not limited to, the attempting eviction of Plaintiff for no-fault and attempted withdrawal of the 1809 Penmar property.

**FOURTH CAUSE OF ACTION**

[Wrongful Eviction, Cal. Civ. Code §§ 1946.2 and 1947.12]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

107.   Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

108.   On January 1, 2020, the California Tenant Protection Act went into effect in Los Angeles County (the "Act"). The Act, codified as Cal. Civ. Code §§ 1946.2 and 1947.12, provides, *inter alia*, that a tenant residing in rented property for more than twelve months is entitled to either a

24

rent-waiver or relocation assistance when an evicted notice is issued for "no fault." The eviction notice issued to the tenant must include notice of the tenant's rights to relocation assistance or a rent waiver.

109.    Plaintiff timely filed an appeal of Defendant's tenant habitability plan. Despite this, Defendants moved for wrongful detainer and obtained a default judgment writ while Plaintiff's appeal was still pending.

110.    Defendants failed to provide proper notice to Plaintiff under Cal. Civ. Code § 1946.2 by failing to notify him of his rights to either a rent-waiver or relocation assistance. In addition, Defendants have wrongfully evoked the no-fault provisions of the Act during the COVID-19 pandemic, including eviction moratoriums on the Federal, State, and City levels. Therefore,

111.    Defendants also took Plaintiffs' default and filed a writ of possession before Plaintiff's responsive pleading was due.

112.    Defendants actions alleged herein have caused Plaintiff damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### [Abuse of Process]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

113.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

114.    Defendants attempted to harm Plaintiff through inappropriate legal process. Cal. Civ. Code § 418.10(c) provides, in part, that if a motion is denied by the Court that "within 10 days after service upon him or her of a written notice of entry of an order of the court denying his or her motion…may petition an appropriate reviewing court for a writ of mandate to require the trial court to enter its order quashing the service of summons or staying or dismissing the action."

115.    Counsel for Plaintiff filed a Notice of Filing of Appeal and Automatic Stay related to its own Motion to Quash on June 4, 2021.

116.    Defendant, despite it being within 10 days of Plaintiff's Motion to Quash, sought and obtained a default judgment against Plaintiff on June 8, 2021.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

117.    Defendants have misused the power of the Court for the purposes of perpetuating an injustice against Plaintiff, in this case seeking default judgment while Plaintiff has appealed its own Motion to Quash. In particular, Rosario has knowingly failed to respect Plaintiff's due process rights. *See S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 41 [176 Cal.Rptr.3d 567]. Defendants have engaged in said actions with the ulterior motive of converting Plaintiff's residence into high-value rental property. *See Coleman v. Gulf Insurance Group* (1986) 41 Cal.3d 782, 792 [226 Cal.Rptr. 90, 718 P.2d77].

118.    Defendants have intentionally used the legal system to harm the Plaintiff, and as a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

[Violation of Los Angeles Tenant Anti-Harassment Ordinance, Los Angeles Tenant Anti-Harassment Ordinance Section 45.33]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

119.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

120.    The Los Angeles Tenant Anti-Harassment Ordinance Section 45.33 (the "Ordinance") prohibits a landlord's knowing and willful course of conduct directed at a specific tenant that seriously alarms or annoys the tenant, and that serves no legitimate purpose. Violations of the Ordinance include, but are not limited to, failure to perform and timely complete necessary repairs and maintenance required by State, County, or local housing, health, or safety laws, refusing to acknowledge or accept receipt of lawful rent payments as established by the usual practice of the parties or applicable law, and engaging in an activity prohibited by federal, state, or local housing anti-discrimination laws.

121.    Defendants have failed to provide timely maintenance and repairs of Plaintiff's property, including, as noted by the LAHCID, including failure to provide adequate fire alarms to Plaintiff, failure to maintain plaster/drywall walls/ceilings in a smooth and sanitary condition, failure to provide and maintain the required central or individual room heating appliance in good repair and operable at all times, failure to provide and/or maintain the required foundation vent or under floor

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

access screens, and failure to maintain the plumbing system in conformity with the code regulations and department approvals in effect at the time of construction.

122.    As a direct and proximate result of Defendants' violations of the Ordinance, Plaintiff in an amount to be proven at trial.

<strong>SEVENTH CAUSE OF ACTION</strong>

[Intentional Infliction of Emotional Distress]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

123.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

124.    A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff is suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the Defendants' outrageous conduct.

125.    A Defendants' conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the Defendants' conduct must be a" 'intended to inflict injury or engaged in with the realization that injury will result. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050—1051 [95 Cal.Rptr.3d 636, 209 P.3d 963]). It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903-904 [2 Cal.Rptr.2d 79, 820 P.2d 181]).

126.    Defendants conduct towards Plaintiff has been outrageous. Defendants have placed security cameras outside Plaintiff's house, taking away any semblance of his privacy. Defendants have knowingly limited the ability for Plaintiff to enter his own residence by requiring the handicapped Plaintiff to walk a narrow pathway filled with nails and loose wire in order to reach his front door. Defendants have knowingly placed portable toilets and piles of debris near Plaintiff's house. These knowing harms are by no means exhaustive.

127.    By their own conduct, Defendants intended to cause Plaintiff emotional distress, or alternatively, acted with reckless disregard of the probability that Plaintiff would suffer emotional distress. At a minimum, Defendants knew that emotional distress would likely result from their conduct and gave little to no thought to the probable effects of their conduct.

128.    Defendants' conduct as alleged herein proximately caused Plaintiff severe emotional distress.

### EIGHTH CAUSE OF ACTION

[Negligent Infliction of Emotional Distress]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

129.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

130.    Plaintiff has suffered, and continues to suffer, severe and extreme emotional distress as a direct result of Defendants' negligent behavior. Defendants have placed portable toilets, debris, and other noxious materials in the direct proximity of Plaintiff's residence, and agents of Defendants have urinated and defecated in front of Plaintiff's residence. At a minimum, Defendants have negligently inflicted harmed on Plaintiff by failing to monitor its own construction site and ensure Plaintiff does not suffer harm. The Plaintiff, as a result, has suffered emotional harm in the form of reduced quality of life, reduced sleep, and exposure to noxious chemicals and smells.

131.    The harmed suffered by Plaintiff is a direct and proximate result of Defendants' negligent conduct.

### NINTH CAUSE OF ACTION

[Violation of the Ellis Act, Cal. Gov. Code §7060.4]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

143.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

144.    Cal. Gov. Code §7060.4 mandates that a landlord must give at least one-years notice under the California Ellis when the tenant is a senior (age 62) and/or disabled. A disabled person under the Ellis act means "having a condition that limits a major life activity". *See* Cal. Gov. Code § 12955.3.

In addition, under Cal. Health and Safety Code § 50072, a handicapped is defined, *inter alia*, as "suffering from an orthopedic disability impairing personal mobility." The Plaintiff has, and currently suffers from, a debilitating orthopedic condition that impairs his ability to walk. Therefore, the Plaintiff is considered both disabled and handicapped for the purposes of Ellis Act protections, and is entitled to one-years notice of eviction.

145.    Plaintiff was not given a one-year notice of eviction. Plaintiff is over the age of 62 and is disabled for the purposes of applicability of the Ellis Act due to his mobility issues, psoriasis, and diabetes.

146.    Defendants have knowingly attempted to evict the Plaintiff despite him not receiving proper notice under the Ellis Act.

**TENTH CAUSE OF ACTION**

[Quiet Title ]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

147.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

148.    Plaintiff's purpose of quieting title is to establish clear title against adverse claims to real property or any interest in the real property. Cal. Civ. Code § 760.020.

149.    Plaintiff seeks a judicial determination that Plaintiff has a leasehold interest in the subject property, along with the right to reoccupy the property when construction per the THP is completed. Accordingly, a quiet title action is a legal proceeding where a person or entity (Plaintiff) claims title to all or a portion of specific real property and asks the Court for a ruling that Plaintiff's title is superior to any interest that is claimed by the Defendant(s).

150.    As a direct, proximate, and foreseeable result of said unlawful eviction by Defendants, Plaintiff suffered actual, special, and general damages.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

**ELEVENTH CAUSE OF ACTION**

[Specific Performance]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

151.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

152.     Unless a mandatory injunction is granted ordering specific performance of the terms of the THP granted by the city allowing Plaintiff to reoccupy the premises, Plaintiff will be damaged by allowing defendants to unlawfully evict him from his current.

153.     Specific performance by mandatory Injunctive relief is necessary to prevent the irreparable denial of Plaintiff's rights

**TWELFTH CAUSE OF ACTION**

[Declaratory Relief]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

154.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

155.     Plaintiff contends that Defendants have caused and will continue to cause unlawful harm to Plaintiff.

156.     Plaintiff seeks declaratory relief stating that (a) Plaintiff is considered elderly for the purposes of Ellis Act protection; (b) Plaintiff is considered disabled and/or handicapped for the purposes of Ellis Act protection; (c) that the Defendants' 3-day notice to vacate was defective on face; (d) that the Defendants' unlawfully filed an unlawful detainer against Plaintiff; (e) that the Defendants' attempted eviction of Plaintiff is unlawful; (f) that the Defendants have violated federal, state, and city eviction moratoriums, (g) that the state court lacked jurisdiction to enter default judgment while appeal of tenant habituality plan stayed the implementation pending appeal, and (h) that Defendants have provided no basis for lawful eviction.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

**THIRTEENTH CAUSE OF ACTION**

[Breach of Implied Covenant of Quiet Enjoyment, Cal. Civ. Code § 1927]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

157.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

158.    Defendants have repeatedly tried to evict Plaintiff through novel and illicit methods, including Ellis Act Evictions in violation of Los Angeles City ordinances and through constructive eviction in the form of, *inter* alia, a reduction in access by Plaintiff to his residence.

159.    Defendants' actions herein have resulted in Plaintiff being unsure of his ability to continue to live safely and quietly at his residence.

160.    By doing the acts herein, Defendants have breached the implied covenant of quiet enjoyment pursuant to Cal. Civ. Code § 1927 with respect to the tenancy established between Plaintiff and Defendants.

161. As a direct, proximate, and foreseeable result of said unlawful eviction by Defendants, Plaintiff suffered actual, special, and general damages.

**FOURTEENTH CAUSE OF ACTION**

[Violation of Civil Rights Act of 1866]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

162.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

163.    By doing the acts complained herein, Defendants have violated the Plaintiff's rights to fair housing under the Civil Rights Act of 1866, 42 U.S.C. 1982, in that Defendants denied Plaintiff the opportunity to rent, use, or enjoy housing because of their race, color, national origin, and/or religion.

164. As a direct, proximate, and foreseeable result of said unlawful eviction by Defendants, Plaintiff suffered actual, special, and general damages, according to proof at trial.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

**FIFTEENTH CAUSE OF ACTION**

[Violation of Tenant Habitability Plan, LAMC 152.00 et seq.]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

165.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

166.    By doing the acts complained herein, (circumventing the Ellis Act, filing a fraudulent remodeling permit when the intent was to demolish the building, failing to obtain city approval and serve on tenant Declaration of Intent to Evict under the LAMC, Defendants have violated the Tenant Habitability Plan, LAMC 152.00 et seq in that Defendants failed to provide relocation assistance; failed to provide safe, decent and sanitary temporary replacement housing; failed to obtain city approval before filing the unlawful detainer, failing to serve tenant with required notice under THP.

167.    As a direct, proximate, and foreseeable result of said unlawful eviction by Defendants, Plaintiff suffered actual, special, and general damages.

**SIXTEENTH CAUSE OF ACTION**

[Retaliation, Civ. Code 1942.5]

*Against Defendants 1169 Palms, LLC, Penmar/Palms LLC , Rosario, Rosario PLC, and Schwartz*

168.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

169.    It is illegal for a landlord to retaliate against a tenant in California who has exercised a legal right, such as complaining to the landlord about unsafe or illegal living conditions complaining to a government agency, such as a building or health inspector, about unsafe or illegal living conditions.

170. By doing the acts complained herein, Defendants have retaliated against Plaintiff in violation of Civ. Code section 1942.5

171. As a direct, proximate, and foreseeable result of said eviction by Defendants, Plaintiff suffered actual, special, and general damages.

**PRAYER FOR RELIEF**

Plaintiff prays this Court enter judgment as follows:

1.     Declare that the discriminatory practices of Defendants as set forth above violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*; California Fair Employment and Housing Act, Cal. Gov. Code § 12955(a), the California Unruh Civil Rights Act, Cal. Civ. Code §51 *et seq.*, and the Civil Rights Act of 1866.

2.     Declare that the Defendants are in violation of Federal, California State, and Los Angeles City Eviction Moratoriums.

3.     Enjoin Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of the Defendants from continuing to discriminate against Plaintiff on the basis of race, national origin, age, and handicap status.

4.     Order that Plaintiff be permitted to reoccupy his residence and confirm his leasehold interest in the subject property.

5.     Award compensatory damages to Plaintiff.

6.     Award statutory damages to Plaintiff.

7.     Award punitive damages to Plaintiff.

8.     Award declaratory relief to Plaintiff

9.     Award injunctive relief to Plaintiff

10.    Award treble damages to Plaintiff

11.    Award any other such damages that may be permitted under all of the above federal, state, and local statutes and regulations.

12.    Award Plaintiff reasonable attorneys' fees and costs in this action.

13.    Award all such other relief that the Court deems just.

**REQUEST FOR JURY TRIAL**

Dated: December 31, 2021                         */s/Perry C. Wander*
                                                 Perry C. Wander
                                                 Attorney for Plaintiff  Victorio Campos

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**

## <u>CERTIFICATE OF SERVICE</u>

*Campos v. 1169 Palms, et al.*
Case No.: 2:21-cv-05625

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 Wilshire Boulevard, 11th Floor, Los Angeles, California 90017-2444.

On **December 31, 2021**, I served the foregoing document(s) described as:   **FIRST AMENDED COMPLAINT,** on interested parties in this action by as follows:

(

☒   **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☐   **BY MAIL** (C.C.P. §§ 1013a, *et seq.*)**:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the offices of the addressee(s).

☒   **FEDERAL:**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America and State of California, that the foregoing is true and correct. Executed on December 31, 2021**,** at Los Angeles, California.

*/s/Perry C. Wander*
PERRY C. WANDER, ESQ.

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELEIF**