**UNITED STATES DISTRICT COURT**                                       JS-6
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **CV 21-5625-JFW(KSx)**                          Date:  May 23, 2022

Title:        Victorio Campos -v- 1169 Palms LLC, et al.

**PRESENT:**
        **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

        **Shannon Reilly**                          **None Present**
        **Courtroom Deputy**                       **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**     **ATTORNEYS PRESENT FOR DEFENDANTS:**
                  None                                              None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING DEFENDANTS ROSARIO PERRY AND ROSARIO PERRY, A PROFESSIONAL LAW CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c) [filed 3/28/22; Docket No. 60]; and**

**ORDER GRANTING DEFENDANTS 1169 PALMS, LLC, PENMAR/PALMS LLC, AND STEVEN H. SCHWARTZ'S MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(c) [filed 3/28/22; Docket No. 62]**

        On March 28, 2022, Defendants Rosario Perry[1] and Rosario Perry, a Professional Law Corporation (collectively, the "Perry Defendants") filed a Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) (the "Perry Defendants' Motion for Judgment on the Pleadings").  On March 28, 2022, Defendants 1169 Palms, LLC, Penmar/Palms LLC, and Steven H. Schwartz (the "Palms Defendants") filed a Motion for Judgment on the Pleadings on Plaintiff's First Amended Complaint Pursuant to FRCP Rule 12(c) (the "Palms Defendants' Motion for Judgment on the Pleadings").  On April 22, 2022, Plaintiff Victorio Campos ("Campos") filed his Opposition.[2]  On May 2, 2022, the Perry Defendants and the Palms Defendants (collectively, "Defendants") filed their respective Replies.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local

_____

        [1]  On April 7, 2022, Rosario Perry passed away.

        [2]  Plaintiff filed a single Opposition that addressed both Motions for Judgment on the Pleadings.

Rule 7-15, the Court found the matters  appropriate for submission on the papers without oral argument.  The matters were, therefore, removed from the Court's May 16, 2022 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I.      Factual and Procedural Background[3]

According to Campos, "[t]his action arises from a dispute over possession of residential rental property."  First Amended Complaint ("FAC"), ¶ 1.  Since at least 2010, Campos, who is 63 years old, of Hispanic origin, and suffers from a number of health issues, was in possession of one unit in the seven unit residential rental property located at 1809 Penmar Avenue, Venice, California (the "Property").  FAC, ¶ 21.  The Property is subject to the Los Angeles Rent Stabilization Ordinance.

In 2015, the Palms Defendants purchased the Property and, two years later, began redevelopment of the Property, including the other six units after those tenants voluntarily vacated their units.  Campos declined to vacate his unit.  The construction during the redevelopment impacted Campos's access to his unit, closed the laundry facilities, caused disruption to utilities, impaired the use of common areas, and caused generally loud and dirty conditions.

### A.      The Ellis Act and the Tenant Habitability Plan

In November 2019, the Palms Defendants served Campos with a 120 Day Notice to Quit pursuant to California Government Code §§ 7060, *et seq*. (The "Ellis Act"), to remove the Property from the rental market. A dispute arose regarding the amount of relocation fees that had to be deposited, which resulted in a mandamus proceeding brought by the Palms Defendants in an action entitled *1169 Palms, LLC v. City of Los Angeles*, LASC Case No. 20SMCP00213.  The mandamus proceeding has been dismissed.

Separate from the Palms Defendants' efforts to proceed under the Ellis Act, the Palms Defendants also submitted a Tenant Habitability Plan ("THP") pursuant to the Los Angeles Municipal Code, Section 152.00, *et seq.,* requesting the City's approval to perform substantial repairs to Campos's unit.  In accordance with the THP process, the Palms Defendants procured a comparable apartment for Campos to occupy during the renovation.  On September 10, 2020, the City, though the Housing and Community Investment Department ("HCIDLA"), accepted and approved the THP.  Campos filed an administrative appeal of the City's decision to accept the THP, arguing that: (1) the Palms Defendants refused to pay Campos's relocation costs; (2) Campos is elderly and disabled; (3) the Palms Defendants terminated Campos's utilities; and (4) the proposed temporary housing unit that the Palms Defendants secured for Campos is not

---

[3]  The Perry Defendants' Request for Judicial Notice (Docket No. 61) and the Palms Defendants' Request for Judicial Notice (Docket No. 63) are **GRANTED**.  *See* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds,* 307 F.3d 1119 (9th Cir 2002) (holding that a court may take judicial notice of undisputed "matters of public record"); *Kismet Acquisition, LLC v. Diaz-Barba*, 755 F.3d 1130, 1142 (9th Cir. 2014) (holding that a court may properly take judicial notice of court filings).

comparable to his then-current unit.  On November 20, 2020, the HCIDLA issued a decision rejecting Campos's appeal and affirming the City's decision to accept the THP (the "Decision"). The Decision held that "the evidence and testimony presented revealed no issues that warrant[ed] modification of the subject Tenant Habitability Plan" because the THP met the requirements for proposed primary renovation work and the proposed temporary housing unit for Campos was a comparable unit.  The Decision informed the Palms Defendants that they were required to serve notification of a new start date for the construction on Campos's unit, and that construction could begin fifteen days after notice was served.  In addition, the Decision informed Campos that he would have ninety days to file a writ to challenge the HCIDLA's Decision.

On February 18, 2021, Campos filed a writ of mandate, challenging the HCIDLA's Decision, entitled *Campos v. City of Los Angeles*, LASC Case No. 21SMCP00066 (the "THP Mandamus Action").  In the THP Mandamus Action, Campos alleged, amongst other issues, that his eviction violated the Ellis Act.

On August 10, 2021, Campos dismissed his writ of mandate challenging the HCIDLA's Decision.

### B.    The Unlawful Detainer Action

Consistent with the THP and the HCIDLA's Decision, the Palms Defendants served Campos with a copy of the approved THP and a fifteen day notice of the new construction date.  After Campos refused to relocate to the unit that the Palms Defendants had secured for him, the Palms Defendants served Campos with a Three Day Notice to Quit on December 18, 2020.  After Campos failed to comply with Three Day Notice to Quit, the Palms Defendants, represented by the Perry Defendants, filed an unlawful detainer action against Campos on December 24, 2020, entitled *1169 Palms, LLC v. Campos*, LASC Case No. 20SMUD00935 (the "Unlawful Detainer Action").  The Perry Defendants also filed the new mandatory cover sheet for evictions, which was adopted for use on October 5, 2020 during the COVID-19 pandemic.

On January 7, 2021, Campos filed a motion to quash the summons in the Unlawful Detainer Action.  In his motion to quash, Campos argued that the Three Day Notice to Quit failed to strictly comply with the statutory requirements of the Los Angeles Municipal Code and California Code of Civil Procedure § 1946.2(c)(4).  Campos also argued that the HCIDLA's Decision was not final until February 10, 2021, which was the last day to file the petition for writ of mandate.

On March 24, 2021, the trial court denied Campos's motion to quash because Campos's counsel did not appear when the motion was called.  The trial court also ordered Campos to respond to the Unlawful Detainer Complaint within five days.  Rather than filing a response, Campos moved to set aside the trial court's denial of his motion to quash.  Meanwhile, the Palms Defendants sought the entry of default against Campos in the Unlawful Detainer Action.  On May 28, 2021, the trial court issued an order declining to enter default, but reaffirmed its denial of the motion to quash, this time on substantive grounds (the May 28, 2021 Order").

On June 4, 2021, Campos attempted to file a petition for writ of mandate in the Superior Court Appellate Division, seeking review of the May 28, 2021 Order.  On the same day, Campos served the Palms Defendants with a Notice of Automatic Stay.  However, shortly thereafter,

Initials of Deputy Clerk  _sr_

Campos's writ was rejected because it was not filed in the proper location.  Campos managed to properly filed the writ on June 7, 2021, and again served the Palms Defendants with a Notice of Automatic Stay on June 8, 2021, which was one day after the June 7, 2021 deadline for Campos to respond to the Unlawful Detainer Complaint.

On June 8, 2021, the Palms Defendants requested entry of default in their Unlawful Detainer Action, which the trial court entered on the same day.  On June 9, 2021, the Palms Defendants obtained a writ of possession.  On June 17, 2021, the Appellate Division denied Campos's writ of mandate and request for stay.  On June 22, 2021, the Los Angeles County Sheriff posted a Five Day Notice to Vacate on Campos's unit.  On June 23, 2021, after Campos had received the Appellate Division's June 17, 2021 ruling denying his writ of mandate and request for stay, Plaintiff filed a regularly noticed motion to vacate and set aside default, with a hearing date of July 28, 2022.  On July 14, 2021, the Palms Defendants took possession of Campos's unit.

On July 28, 2021, the trial court granted Campos's motion to vacate and set aside the default, concluding that the Unlawful Detainer Action could proceed on the issue of damages, but that the issue of possession was moot.

### C.      Procedural History

On July 12, 2021, Campos filed his Complaint in this action.  On December 31, 2021, Campos filed his FAC, alleging sixteen causes of action.  On February 14, 2022, the Court entered its Order Declining to Exercise Supplemental Jurisdiction Over State Law Claims (the "February 14, 2022 Order").  In the February 14, 2022 Order, the Court severed Campos's Fair Housing Act and Civil Rights Act of 1866 claims from Campos's state law claims, dismissed Campos's state law claims without prejudice to refiling in state court, and retained jurisdiction over only the Fair Housing Act and Civil Rights Act of 1866 claims.

## II.      Legal Standard

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c).  "A Rule 12(c) motion is functionally identical to a motion pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)).  As with motions brought pursuant to Rule 12(b)(6), in addition to assuming the truth of the facts plead, the court must construe all reasonable inferences drawn from those facts in the nonmoving party's favor.  *See Lonberg*, 300 F. Supp. 2d at 945*; see also Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted).

Initials of Deputy Clerk  _sr_

**III.     Discussion**

In their Motions for Judgment on the Pleadings, Defendants argue that Campos's Fair Housing Act and Civil Rights Act of 1866 claims are barred by the *Rooker-Feldman* and the *Noerr-Pennington* doctrines.  In his Opposition, Campos argues that the *Rooker-Feldman* doctrine does not apply because his Fair Housing Act and Civil Rights Act of 1866 claims have not been litigated and there have been no court judgments on any threshold questions.  Campos argues that the *Noerr-Pennington* doctrine does not apply because this action is not based on Defendants' filing and prosecuting the Unlawful Detainer Action.

**A.     Legal Standard for *Noerr-Pennington* Doctrine**

"[T]he *Noerr-Pennington* doctrine requires that, to the extent possible, [courts] construe federal statutes so as to avoid burdens on activity arguably falling within the scope of the Petition Clause of the First Amendment."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006).  "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  *Id*. at 929 (*citing Empress LLC v. City & Cty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)).  Petitioning activity is immune from statutory liability "notwithstanding the fact that [the] activity might otherwise be proscribed by the statute involved."  *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000).

The *Noerr-Pennington* doctrine arises from *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).  These cases held that the Petition Clause of the First Amendment of the United States Constitution insulates petitioning conduct from liability under the Sherman Act, regardless of the petitioner's anti-competitive purpose or intent.  *See Noerr*, 365 U.S. at 138; *Pennington*, 381 U.S. at 669-72.  "While the *Noerr-Pennington* doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore . . . applies equally in all contexts."  *White*, 227 F.3d at 1231 (citations omitted).  Indeed, "the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause."  *Sosa*, 437 F.3d at 931.  "Under the *Noerr-Pennington* rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise."  *Id*.  The *Noerr-Pennington* doctrine has been extended beyond the statutory context to apply to state common law torts based on activity that implicates the Petition Clause.  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007-08 (9th Cir. 2008).  However, the protection afforded by the *Noerr-Pennington* doctrine is not absolute.  Where petitioning activity is "a mere sham to cover what actually is nothing more than an attempt to interfere directly with the business relationships of a competitor," immunity does not apply.  *Noerr*, 365 U.S. at 144.

"The 'sham' exception to *Noerr-Pennington* encompasses situations in which persons use the governmental process – as opposed to the outcome of that process – as an anti-competitive weapon."  *Id*.  The sham litigation exception does not apply so long as the party "was genuinely seeking governmental action."  *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (*citing Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1081 (9th Cir. 1976)).  The sham litigation exception applies:

Initials of Deputy Clerk  _sr_

[F]irst, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (internal quotation marks and citations omitted).  Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the merits."  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  Litigation is brought with an unlawful motive if it "conceals an attempt to interfere directly with the business relationships of a competitor."  *Id.* at 60–61 (internal citation omitted).

## B.      The *Noerr-Pennington* Doctrine Applies To This Action

The *Noerr-Pennington* doctrine provides immunity from liability for a defendant who engages in the filing and prosecution of a lawsuit, and that immunity also extends to pre-lawsuit communications and conduct that is "incidental to the prosecution of the suit."  *Sosa*, 437 F.3d at 939.  Indeed, the *Noerr-Pennington* doctrine has been applied to bar claims based on federal civil rights statutes.  *See Boulware v. Nevada*, 960 F.2d 793, 800 (9th Cir. 1992) (affirming the dismissal of a Section 1983 claim and holding that "activity protected by *Noerr-Pennington* cannot form the basis of section 1983 liability" where the plaintiff sought "to recover under 42 U.S.C. § 1983, alleging that defendants, acting under color of Nevada law, deprived Boulware of property without due process of law in violation of the Fourteenth Amendment").  In addition, the *Noerr-Pennington* doctrine has been applied to bar claims based on the Fair Housing Act.  *See White v. Lee*, 227 F.3d 1214, 1231-1233 (9th Cir. 2000); *see also Keys v. Pearson Affiliated, Inc.*, 2013 WL 12205581 (C.D. Cal. May 14, 2013) ("Under *Noerr–Pennington*, plaintiffs may not pursue FHA or Rehabilitation Act claims based on defendants' filing and prosecution of the state court unlawful detainer action") (internal quotations and citations omitted).

In this case, Campos argues that the *Noerr-Pennington* doctrine does not apply because this action is not based on the filing and prosecution of the Unlawful Detainer Action or the Palms Defendants' submission of the THP to the City for approval (and the subsequent THP Mandamus Action by Campos), but, instead, this action has seeks to expose the conspiracy by Defendants to displace low income tenants in order to build new condominiums so that Palms Defendants could make a significantly greater profit.  However, a defendant's motive is irrelevant in determining the application of the *Noerr-Pennington* doctrine.  *White*, 227 F.3d at 1231-34 (holding that individuals who sued to prevent the conversion of a motel into a multi-family housing unit for homeless persons were immunized from FHA liability under the *Noerr–Pennington* doctrine, even if their motivation in bringing the suit was to discriminate against handicapped persons, so long as the suit was not objectively baseless); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 668-69 (1965) (holding that illegal purposes and motivations behind petitioning do not make the petitioning conduct illegal).

In addition, Campos argues that he is seeking to hold the Palms Defendants and the Perry Defendants liable for age, race, and disability discrimination, and is "not seeking to impose liability

for Defendants' act of filing the unlawful detainer action."  However, all the activities alleged by Campos against the Palms Defendants and the Perry Defendants in the FAC are protected petitioning activities or activities incidental to and in anticipation of petitioning activity.  *See, e.g., Keys*, 2013 WL 12205581, at *5 ("The face of the First Amended Complaint demonstrates that all of the Zakari Defendants' alleged wrongful acts are based solely on petitioning the Los Angeles County Superior Court as the attorney for the landlord in two unlawful detainer actions against Plaintiff").  For example, the Palms Defendants had the right to petition the HCIDLA for approval of the THP.  Moreover, as soon as Campos refused to temporarily vacate the Property pursuant to the terms of the THP, the Palms Defendants had the right to file the Unlawful Detainer Action.  Furthermore, the sole allegations against the Perry Defendants relate to their legal representation of the Palms Defendants in connection with the administrative proceedings and subsequent litigation brought by the Palms Defendants.  Although Campos alleges specific conduct by Defendants that he claims violated his rights – including serving Campos with a 120 Day Notice to Quit under the Ellis Act without depositing the appropriate amount of relocation assistance, failing to provide and strictly follow the THP, failing to provide a declaration with the eviction notice, violating the automatic stay, repeatedly attempting to enter default on the Unlawful Detainer Action, triggering an earlier date to respond to the Unlawful Detainer Action by serving notice on Campos instead of waiting until the trial court served notice, and, with the assistance of the Los Angeles County Sheriff, executing on the writ of possession issued by the trial court – all of the alleged conduct undeniably relates to petitioning activity.  *Sosa*, 437 F.3d at 934 (holding that in order for a party to be able to "exercise its petitioning rights meaningfully," that party "may not be subjected to liability for conduct intimately related to its petitioning activities").

Finally, although Campos argues that the *Noerr-Pennington* doctrine does not apply because the Palms Defendants' legal proceedings against Campos were "objectively baseless" and the doctrine does not "immunize defendants from allegedly making misrepresentations during legal proceedings," Campos has failed to provide any facts – either in his FAC or in his Opposition – that would support those arguments.  Instead, Campos relies on mere conclusory allegations and speculation.  In addition, because the THP was approved by the City and because the Palms Defendants prevailed in the Unlawful Detainer Action on the issue of possession, Campos cannot demonstrate that the Palms Defendants' actions were "objectively baseless."  *See, e.g., Thomas v. Housing Authority of County of Los Angeles*, 2005 WL 6136440 (C.D. Cal. June 3, 2005) (holding that because the defendants had prevailed in the unlawful detainer action, it was "conclusively resolve[d] whether a reasonable litigant could have expected success on the merits, and precludes plaintiffs from arguing that the prior action was baseless").  Moreover, Campos has failed to allege any facts demonstrating that Defendants' alleged fraud or purported intentional misrepresentations were material and deprived the THP approval process and the Unlawful Detainer Action of their legitimacy.

Accordingly, the Court concludes that Campos's Fair Housing Act and Civil Rights Act of 1866 claims are barred by the *Noerr–Pennington* doctrine.

## C.   Legal Standard for *Rooker-Feldman* Doctrine

Under the *Rooker–Feldman* doctrine, a district court lacks "subject matter jurisdiction to hear a direct appeal from the final judgment of a state court."  *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).  The Supreme Court "is the only federal court with jurisdiction to hear such an appeal."

Initials of Deputy Clerk __sr__

*Id*.

The *Rooker–Feldman* doctrine bars federal jurisdiction not only for direct appeals from state court decisions, but also for "*de facto* appeals," whereby "the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court."  *Id*. at 1163; *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1143 (9th Cir. 2004) (holding that there was no *de facto* appeal in violation of *Rooker–Feldman* where plaintiff "has asserted no legal error by the state court").  As a result, an affirmative independent legal wrong asserted against a party involved in the state court action in a subsequent federal action is not barred under *Rooker–Feldman*.  *Noel,* 341 F.3d at 1164.

The *Rooker–Feldman* doctrine applies not only to attempts to raise issues that could have been raised in the previous state action, but also to efforts to raise any issue "inextricably intertwined" with the prior decision of the state court.  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983).  To be "inextricably intertwined" with a state court judgment, the federal claim must succeed "only to the extent that the state court wrongly decided the issues before it (or) if the relief requested . . . would effectively reverse the state court decision or void its ruling."  *Fielder v. Credit Accept. Corp.*, 188 F.3d at 1034.  "The crucial point is whether the district court is being asked to review the state court decision."  *Fayyumi v. City of Hickory Hills*, 18 F.Supp. 2d 909, 913 (N.D. Ill. 1998).  For an issue to be inextricably intertwined with a state court claim, there must have been a reasonable opportunity to raise the issue in the state proceedings.  *Long v. Shorebank Develop. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999); *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983).

### D.    The *Rooker-Feldman* Doctrine Applies To This Action

In this case, the Court concludes that the *Rooker-Feldman* doctrine bars Campos's Fair Housing Act and Civil Rights Act of 1866 claims.  In this case, the gravamen of Campos's Fair Housing Act and Civil Rights Act of 1866 claims is a challenge to the HCIDLA's Decision, the rulings by the state court in the Unlawful Detainer Action, and the subsequent enforcement of those rulings.  In his FAC, Campos has failed to raise any issue or argument that was not considered and rejected by the HCIDLA or the state court in the Unlawful Detainer Action.  Indeed, it is clear from the very first paragraph of Campos's FAC where he alleges that "[t]his action arises from a dispute over possession of residential rental property" that Campos is attempting to re-litigate the HCIDLA's approval of the THP and the rulings of the state court in the Unlawful Detainer Action.

Specifically, to the extent Campos's Fair Housing Act and Civil Rights Act of 1866 claims are based on Campos's belief that the HCIDLA's Decision (and the subsequent THP Mandamus Action) was erroneous and in violation of California law, the Court concludes that those claims are barred by the *Rooker-Feldman* doctrine because those claims serve as a *de facto* appeal of the HCIDLA's Decision, which became final when Campos dismissed his THP Mandamus Action.  *Rooker-Feldman* applies to decisions issued by "agencies that are appropriately characterized as arms of the state judiciary . . . either because they exercise powers that are inherent to the judiciary, or because the state has provided mechanisms for judicial review of their determinations that distinguish those determinations from other types of state administrative action."  *Mitchell v. Fishbein*, 377 F.3d 157, 166 (2d Cir. 2004); *Feldman*, 460 U.S. at 477 (holding that reviewability by

Initials of Deputy Clerk __sr__

a federal district court does not turn on the "character of the body" but the "character of the proceedings").  The HCIDLA's Decision was issued by an agency and its decisions are subject to judicial review.  Indeed, Campos sought judicial review from the Los Angeles Superior Court in the THP Mandamus Action, which Campos voluntarily dismissed.  Because Campos dismissed the THP Mandamus Action, the HCIDLA's Decision upholding the City's approval of the THP after Campos had a full opportunity to present his evidence and arguments is a final decision subject to the *Rooker-Feldman* doctrine.  *See, e.g., Los Angeles Times v. Alameda Corridor Transportation Authority*, 88 Cal App. 4th 1381, 1388-89 (2001) (holding that an order denying an attorneys' fees application was appealable as a final judgment because the order "had all the earmarks of a final judgment" and nothing remained for the trial court's future consideration and there was no other opportunity for appellate review).  As a result, the Court concludes that the *Rooker-Feldman* doctrine bars Campos's Fair Housing Act and Civil Rights Act of 1866 claims to the extent they challenge the HCIDLA's Decision.  *See Ezor v. State Bar of California*, 2018 WL 489035, at *5 (N.D. Cal. Jan. 19, 2018), *aff'd,* 754 F. App'x 613 (9th Cir. 2019) ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court") (internal citations omitted); *see also Mola Dev. Corp. v. City of Seal Beach*, 57 Cal. App. 4th 405, 411 (1997) (holding that the plaintiff waived his right to challenge the administrative rulings when he failed to properly litigate a writ of mandamus and giving preclusive effect to the unreviewed administrative decision).  In addition, the Court concludes that *Rooker-Feldman* doctrine also bars Campos's Fair Housing Act and Civil Rights Act of 1866 claims because the issues raised in those claims are "inextricably intertwined" with the HCIDLA's Decision.  *See Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (holding that the *Rooker-Feldman* doctrine applies where "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it") (internal quotation omitted); *see also Prince v. Arkansas Board of Examiners in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004) ("The *Rooker–Feldman* doctrine bars both straightforward and indirect attempts by a plaintiff to undermine state court decisions") (citation and quotation marks omitted).

In addition, the Court concludes that the *Rooker-Feldman* doctrine applies to Campos's *de facto* appeal of the issues determined by the state court in the Unlawful Detainer Action, including the denial of Campos's motion to quash and finding that there was no automatic stay of the Unlawful Detainer Action (which resulted in Campos's default being entered and the issuance of a writ of possession).  Although the Supreme Court narrowed the applicability of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp.*, 544 U.S. 280, the Ninth Circuit has continued to apply the *Rooker–Feldman* doctrine to interlocutory orders.  *See, e.g., Hanson v. Firmat*, 272 Fed. Appx. 571, 572 (9th Cir. 2008) (holding that the *Rooker-Feldman* doctrine barred "judicial decisions of a state court" in connection with child custody proceedings); *see also Bugoni v. Thomas*, 259 Fed. Appx. 11, 11–12 (9th Cir. 2007) (holding that the *Rooker-Feldman* doctrine barred 42 U.S.C. § 1983 claims based on a "reassignment of [plaintiff's] state court civil cases to a different state court judge); *Zayas v. Messit*, 2021 WL 3675033, at *4 (W.D. Wash. Aug. 19, 2021) ("The doctrine applies not only to final judgments but also to interlocutory orders entered prior to the final disposition of a state court lawsuit").  Indeed, the Ninth Circuit recently reaffirmed that the *Rooker-Feldman* doctrine "applies to both final and interlocutory decisions from a state court."  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021).  As a result, the Court concludes that the *Rooker-Feldman* doctrine bars Campos's Fair Housing Act and Civil Rights Act of 1866 claims because they challenge the issues previously determined by the state court in the Unlawful Detainer Action, including the denial of Campos's motion to quash and finding that there was no

Initials of Deputy Clerk  _sr_

automatic stay of the Unlawful Detainer Action.  In addition, the Court concludes that *Rooker-Feldman* doctrine also bars Campos's Fair Housing Act and Civil Rights Act of 1866 claims because the issues raised in those claims are "inextricably intertwined" with the issues determined by the state court in the Unlawful Detainer Action.  *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (finding that the plaintiffs' claims were a *de facto* appeal from state court proceedings); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 896 (9th Cir. 2003) (holding civil rights claims were *de facto* appeals of underlying adverse appellate decision); *see also Staley v. Ledbetter*, 837 F.2d 1016, 1017-1018 (11th Cir. 1988) (holding that the *Rooker-Feldman* doctrine applies where a plaintiff has sought state judicial review of this underlying proceeding before pursuing federal relief).

Accordingly, the Court concludes that Campos's Fair Housing Act and Civil Rights Act of 1866 claims are barred by the *Rooker-Feldman* Doctrine.

### E.      Leave to Amend Would Be Futile

The Ninth Circuit has instructed that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  However, "[a] district court may dismiss a complaint without leave to amend if amendment would be futile."  *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation and quotation marks omitted); *Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile").

In this case, the Court concludes that it would be futile and, thus, unnecessary to provide Campos yet another opportunity to amend his Fair Housing Act and Civil Rights Act of 1866 claims.  *See, e.g., Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) ("The basic underlying facts have been alleged by plaintiffs and have been analyzed by the district court and us.  We conclude that the plaintiffs cannot cure the basic flaw in their pleading.  Because any amendment would be futile, there is no need to prolong the litigation by permitting further amendment"); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment"); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that "futile amendments should not be permitted").  Campos has had two opportunities to allege these straightforward claims and has failed to do so.  In addition, Campos has made no attempt to demonstrate how these claims could be amended to avoid the bar of the *Rooker-Feldman* and the *Noerr-Pennington* doctrines.

Accordingly, Campos's Fair Housing Act and Civil Rights Act of 1866 claims are dismissed without leave to amend.

Initials of Deputy Clerk _sr_

**IV.      Conclusion**

        For all the foregoing reasons, the Court **GRANTS** the Palms Defendants' Motion for Judgment on the Pleadings and the Perry Defendants' Motion for Judgment on the Pleadings. Campos's Fair Housing Act and Civil Rights Act of 1866 claims are **DISMISSED without leave to amend**, and this action is **DISMISSED**. Consistent with the Court's February 14, 2022 Order, Campos will now have ample opportunity to pursue his state law claims in state court. Counsel for Campos should carefully review the deadlines for re-filing the state law claims in state court to ensure that they are timely filed.

        IT IS SO ORDERED.

Initials of Deputy Clerk _sr_